[No. 2,403.]

# THE MAYOR AND COMMON COUNCIL OF THE CITY OF SAN JOSE ET AL. *v.* JOHN TRIMBLE.

MEXICAN GRANT, INCLUDING PRIVATE CLAIM.—A Mexican grant was confirmed by the United States, excepting certain tracts included within its exterior boundaries, granted to private claimants. Land claimed as part of a tract thus excepted was excluded by an official survey of the tract; *held,* that the land thus excluded is a portion of the land confirmed in the larger grant.

CONSTRUCTION OF STATUTE—LIMITATION TO RECOVERY UNDER MEXICAN GRANT.—An actual adverse possession of five years subsequent to the passage of the Act of 1863, relative to Spanish and Mexican grants, will, in certain cases, bar a recovery under a title derived from Spain or Mexico, even though the title was not confirmed until after the expiration of the five years.

ADVERSE POSSESSION AS BAR TO RECOVERY.—Adverse possession, in order to bar a recovery by the true owner, must have continued, without interruption, during the statutory period. If interrupted, even by force or fraud, and the possession be recovered by a peaceable or forcible entry, or by process of law, the continuity is broken, and the statute begins to run only from the time of the reëntry.

APPEAL from the District Court of the Third Judicial District, County of Santa Clara.

Plaintiffs had judgment, and defendant appealed.

The other facts are stated in the opinion of the Court.

*Moore, Laine & Silent,* for Appellant.

The proofs showed that the defendant Trimble entered into the possession of the premises under a paper title, 1857; that he in all things subjected it to his dominion and control; claimed it as his own against all the world; had it inclosed, and cultivated it, and continuously and uninterruptedly held it until at least as late as January, 1863. The complaint was not filed until the 14th of October, 1868. This gave the defendant title under the statutes of this State. The sixth section of our statute of limitations governs in ejectment. (24 Cal. 289.) The possession of the defendant was adverse, under sections ten, eleven, twelve, and thirteen of Act of Limitations. (2 Hittell, 4352–4356.) The Court placed its instructions on the ground that, as the plaintiffs claimed title under a Spanish or Mexican grant, the statute did not run until final confirmation. Until the amendment of April 18th, 1863 (2 Hittell, 4348, and foot note), a party claiming under such grant had the special privilege of maintaining an action of this kind, if commenced within five years after final confirmation. (See 24 Cal. 114; 26 Cal. 23; 27 Cal. 57; 33 Cal. 448.) This was a special privilege, not really necessary to the protection of such titles, as ejectment could be maintained on such titles, without confirmation. (18 Cal. 198; 21 Cal. 552; 10 Cal. 589; 33 Cal. 102.) By Act of 18th April, 1863 (Stats. 1863, pp. 325, 327), this privilege was limited. All grants then not finally confirmed had to be sued on within five years, or be barred of their remedy where there was one adverse holding. This suit was not so brought; and the defendant's five years holding made him a perfect title. The Spanish grant claimants did not take advantage of the proviso, since they ask this special privilege. It was a mere proviso, and not an exception. The statute was against a Spanish title, as well as

any other, unless the holders took advantage while it existed. Statutes conferring such privileges are strictly construed. (Cooley's Constitutional Limitations, 393, 394, and authorities there cited.) The plaintiffs allowed their time to pass, and their title is governed by the general statute; and under the statute the defendant's long continued possession, before the pretended ouster of the Ogans, gave him a title that could not be divested, except by conveyance or a possession adverse to his own continuance for five years. (See *Arrington* v. *Liscom*, 34 Cal. 363; *Stockmon* v. *Cannon*, 36 Cal. 535.) The Court misdirected the jury as to this matter throughout the instructions.

*J. Alexander Yoell*, for Respondent.

The construction of section six of the Act of 1863, contended for by appellant, is that the plaintiff's remedy was barred before her right accrued. This is not a case of a grant of a specific quantity within large exterior boundaries, but it is a grant of all contained within the exterior boundaries, excepting a certain grant within said exterior boundaries, the quantity and boundaries of which said interior grant remained to be determined, and located, and segregated; and until that question was finally determined, the lands in dispute could not be affected by the statute of limitations. (*Mayor, etc.* v. *Urridias*, 37 Cal. 339.) Such a construction as is given by appellant, would only give a few months, or weeks, or days, within which to commence an action to a certain class of titles, to wit: such as were only confirmed a few months, or weeks, or days before five years after the passage of the Act, and all those confirmed after that date would be barred before the right accrued. Can the Legislature, in defiance of the Constitution and the Treaty of Guadalupe Hidalgo, say: If your title is finally confirmed to you by the Courts of the United States within five years from this date (the passage of the Act), you may

have your land, but if it is not, then you can't get it, although you could not sue for it before? I submit that it cannot, and that such an Act is clearly unconstitutional. (*Brooks* v. *Hyde*, 37 Cal. 366; *Lathrop* v. *Mills*, 19 Cal. 513.) In this case the defendant did not show, nor did he have a five years' continuous adverse possession at the commencement of this action, and therefore could not claim the bar of the statute he contends for. (Hittell, Art. 4,351; *San Francisco* v. *Fulde*, 37 Cal. 349; *Brooks* v. *Hyde*, supra; *Stevenson* v. *Bennett*, 35 Cal. 424; *Leese and Vallejo* v. *Clark*, 3 Cal.; *Maguire* v. *Tyler*, 8 Wallace, 650; *Jordan et al.* v. *Barrett et al.*, 4 How. 169; *Lee* v. *Norris*, Cro. Eliz. 331; *Arrington* v. *Liscom*, 34 Cal. 365.)


By the Court, CROCKETT, J.:

The action is ejectment, and the plaintiffs are clearly entitled to recover, unless the defendant has established a valid defense under the statute of limitations. The plaintiffs claim under a final decree of the Supreme Court of the United States, rendered in June, 1866, confirming to them a large tract, which includes the premises in controversy; but on the face of this decree there is excepted from its operation certain tracts granted by the Spanish or Mexican Governments to private claimants; and of these excepted tracts the "Rancho Milpitas" was one. This tract was granted by the Mexican Government to one Alviso, whose title was confirmed by a final decree of the proper tribunal of the United States prior to the year 1863; and an official survey thereof was made by one Thompson, a Deputy United States Surveyor, which survey included the premises in controversy as a part of said rancho. But in September, 1863, this survey was set aside by competent authority and a new survey ordered, which was accordingly made and became final in December, 1868. This survey excluded the premises in con-

troversy from the Milpitas Rancho; and it results, as a necessary conclusion from these facts, that said premises are a portion of the lands finally confirmed to the plaintiffs by the decree of June, 1866.

But it appears in the case that as early as 1851, Alviso, claiming to be the owner of said premises as a portion of the Rancho Milpitas, sold and conveyed them; and the defendant deraigns title under this conveyance. It further appears that the defendant and his predecessors entered under this title, and had the actual and undisturbed possession from 1851 to 1863, in which last named year the defendant was forcibly evicted from the whole tract, or the greater portion thereof, by one Ogan, who had the actual possession until the early part of the year 1866, when the defendant regained the possession by process of law, and has ever since remained and is yet in possession. The present action was commenced in October, 1868, and the defense chiefly relied upon is the statute of limitations.

The title of the plaintiffs is derived from the Spanish and Mexican Governments, and under the amendment of 1855 to the statute of limitations, it is quite plain that if that amendment had remained in force the statute would not have commenced to run against the plaintiffs until after their claim was finally confirmed and had been located by a final, approved survey. But in 1863 the statute was again amended and materially modified, in respect to actions or defenses founded on titles derived from Spain or Mexico. The sixth section of the amendatory Act, after providing that time which had already run under the existing law, should be taken and computed as a part of the time limited in said amendatory Act, for the commencement of an action or making a defense thereto, proceeds as follows:

"Provided, further, that any person claiming real property, or the possession thereof, or any right or interest

therein under title derived from the Spanish or Mexican Government, or the authorities thereof, which shall not have been finally confirmed by the Government of the United States or its legally constituted authorities, more than five years before the passage of this Act, may have five years after the passage of this Act in which to commence his action for the recovery of such real property or the possession thereof, or any right or interest therein, or for the rents and profits out of the same, or to make his defense to an action founded upon the title thereto; and provided, further, that nothing in this Act contained shall be so construed as to extend or enlarge the time for commencing actions for the recovery of real estate or the possession thereof, under title derived from the Spanish or Mexican Government, in a case where final confirmation has already been had, other than is now allowed under the Act to which this Act is amendatory."

This provision is by no means free from ambiguity; but as I interpret it, the substance of the enactment is that if a title derived from Spain or Mexico had been finally confirmed prior to the passage of said amendatory Act, an actual adverse possession for five years or more after the final confirmation will bar a recovery. But if the title had not been finally confirmed at the time of the passage of the amendatory Act, five years from *the date of its passage* is allowed within which to commence the action against one in the actual adverse possession, without reference to the date of the subsequent confirmation. In other words, an actual adverse possession of five years subsequent to the passage of the Act of 1863, or the time when it took effect, will bar a recovery under a title derived from Spain or Mexico, even though the title was not confirmed until after the expiration of the five years.

Prior to the passage of this Act, an adverse possession,

however long continued, would not defeat a recovery under this class of titles, unless it continued for five years after final confirmation, and before action brought. But in the Act of 1863, the Legislature saw fit to declare that no more than five years from *that date* should be allowed to holders of these titles, which were not then confirmed, within which to commence their actions against persons in the actual adverse possession. Nor is there anything unreasonable or unjust to the holders of these titles in this provision. A long period had already been allowed them within which to perfect their titles and to commence proceedings for the expulsion of intruders, and yet a further period of five years was allowed, by the Act of 1863, for that purpose. They were under no necessity to await a final confirmation before proceeding against intruders, inasmuch as it has been repeatedly decided by this Court that the holder of a Mexican or Spanish grant is entitled to the possession of the whole tract included within the exterior limits of his grant, pending the proceedings for the confirmation of his title, and may maintain ejectment therefor prior to the final confirmation. The holders of these titles, therefore, have no just cause to complain that the Legislature has not been sufficiently indulgent, or has not afforded them the most ample opportunity to protect their rights; and a just regard for the repose of titles demanded that this species of litigation should be speedily ended.

Applying these principles to the case in hand, the conclusion is inevitable that, if the defendant was in the actual adverse possession of the premises in controversy for five years after the Act of 1863 took effect, and prior to the commencement of the action, the plaintiffs were not entitled to recover. But it appears from the evidence that, from the latter part of 1863 to the early part of 1865, the defendant's possession was interrupted by the forcible intrusion of Ogan, who had the actual possession during that period. It is well

settled that an adverse possession, in order to bar a recovery by the true owner, must have continued without interruption during the statutory period. It must have been continuous, and not at intervals only. (*San Francisco* v. *Fulde*, 37 Cal. 349, and cases there cited.) If interrupted, even by force or fraud, and the possession be recovered by a peaceable or forcible entry, or by process of law, nevertheless the continuity of the possession was broken, and in such case the statute will begin to run only from the time of the reëntry. After the intrusion of Ogan, the defendant recovered the possession in 1865, and five years did not thereafter elapse before the commencement of the action. The defense under the statute was, therefore, not made out. The evidence was conflicting as to the value of the rents and profits, and in respect to the fact whether the possession of Ogan included the whole or only a portion of the premises in controversy, and we cannot disturb the verdict on the ground that it is not supported by the evidence.

Judgment affirmed.


[The foregoing opinion was rendered at the December term, 1870. A rehearing was granted, and the following opinion was delivered at the July term, 1871.—REPORTER.]


By the Court, RHODES, C. J.:

We have carefully considered the question in this case, arising upon the construction of the sixth section of the Act of 1863, amendatory of the statute of limitations of 1850, and in our investigations we have had the aid of very elaborate arguments of several counsel who are interested in the question. The reëxamination of the question has strengthened our conviction, that the conclusion announced in our former opinion is correct. We deem it unnecessary to discuss the question at any length at this time. It is proper,

however, to say that, in our opinion, it is clear that the Act of 1855 was repealed by the Act of 1863. The principal purpose of the Act of 1863 was to place all titles, all rights of entry, and all rights of action, on the same footing, so far as respects the statute of limitations; to require every person, whatever may be the source or nature of his title, to whom a cause of action accrues for the recovery of the possession of lands against a person in the adverse possession thereof, to commence his action within the period mentioned in the Act, or be forever barred of his remedy.

To avoid certain misapprehensions which, from the arguments of some of the counsel, seem to exist, it should be stated that we do not hold that where, for any cause, a party has no right of entry, or cannot maintain an action, the statute will run against him. Nor do we hold that if a party acquires a second right of entry, or right of action, that he may not maintain his action within the time limited by the Act, although his remedy under his former right of entry may have become barred. It is unnecessary to express any opinion as to whether a person, while holding one right of entry, can acquire a second, nor whether such second right of entry accrues in the case of a confirmation survey or patent of a "sobrante grant" or a Spanish or Mexican grant of any character.

Judgment affirmed.