84 143
90 345

[No. 12400.  In Bank. — May 12, 1890.]

# WILLIAM H. NORRIS, RESPONDENT, *v.* CHARLES MOODY ET AL., APPELLANTS.

GRANT UPON CONDITION SUBSEQUENT — FORFEITURE — COMMON LAW — OFFICE FOUND — RE-ENTRY. — Under the common law, a breach of condition subsequent will not itself revest title to public or private lands granted upon such condition, without office found or a re-entry for the forfeiture.

ID. — ALCALDE GRANT OF PUEBLO LANDS — DENOUNCEMENT — CIVIL LAW — FORFEITURE A QUESTION OF RIGHT AND WRONG. — The civil law, which applied to all grants made in California prior to the adoption of the common law in 1850, did not require any formal denouncement or re-entry for forfeiture to revest title in a pueblo to lands granted by its alcalde upon condition subsequent, but the question of forfeiture in each case must be determined in view of the circumstances of the case, upon principles of right and wrong.

ID. — INEXCUSABLE BREACH UNDER CIVIL LAW — ADOPTION OF COMMON LAW — SUBSEQUENT GRANT — PATENT TO PUEBLO LANDS. — Where there was no attempt at any time to perform a condition subsequent contained in an alcalde grant, and nothing to prevent or excuse performance, and an inexcusable breach of the condition had occurred long prior to the adoption of the common law in this state, and for nearly forty years thereafter the grantee remained silent, asserting no claim to the lot, and allowing a subsequent grantee of the city to occupy and improve the premises without objection for thirty years of that time, and finally asserted a right only because of the recent issue of a patent for the pueblo lands of the city, it must be held that all right of the grantee under the grant had been forfeited, and the title reverted in the pueblo before the adoption of the common law, and neither such adoption nor the subsequent issuance of such patent restored to him any right in the premises.

ID. — AUTHORITY OF DECISIONS — OBITER DICTUM — STARE DECISIS. — The case of *Touchard* v. *Touchard,* 5 Cal. 307, has not been overruled as an authority; and the case of *Hart* v. *Burnett,* 15 Cal. 599, so far as declaring it to have been overruled, is *obiter dictum,* and cannot be affirmed upon the principle of *stare decisis.* A decision is not even authority, except upon the point actually passed upon by the court and directly involved in the case.

PATENT FOR PUEBLO LANDS — STATUTE OF LIMITATIONS — CONFIRMATION OF SURVEY — ACT OF 1863 — CODE PROVISIONS. — Under the act of 1863, the statute of limitations commenced to run against pueblo lands derived from the Spanish or Mexican government, from the date of final confirmation of the official survey of the lands.  Under the codes, which went into effect January 1, 1873, the limitation runs against such lands, without regard to the confirmation of the survey or grant, or to the issuance of any patent.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion of the court.

*John Reynolds,* and *A. L. Rhodes,* for Appellants.

*T. H. Laine,* for Respondent.

Fox, J.—Action in ejectment. Judgment for plaintiff, from which defendants appeal.

There are two controlling points in this case, upon each of which we think the court below erred in its conclusion of law.

The material facts, as found by the court and conceded by counsel, are these:—

The land in controversy is a lot in the city of San José, found and conceded to be within the exterior boundaries of the lands finally confirmed and subsequently patented to said city as the successor of the pueblo of San José de Guadaloupe. The lot is fifty varas square, known as lot 3, in block 1, range 8, and was granted by the alcalde of the pueblo, July 12, 1847, to Leo Norris, upon the express condition subsequent, stated in the grant, "that said Leo Norris will fence said lots with a redwood fence or erect a dwelling-house thereon on or before the expiration of twelve months from date." On the 24th of May, 1882, Leo Norris made a deed purporting to convey the lot to William H. Norris, the present plaintiff. Neither the said Leo Norris, nor any one in his behalf or claiming under him, ever had the actual possession of said lot, or made any improvement thereon.

On the 27th of October, 1857, one Warren, claiming to be the owner of the lot, conveyed the same to Ransom G. Moody, who immediately went into possession, and thereafter continued in the open, notorious, actual, exclusive, and adverse possession of the same, claiming title thereto in fee against all the world, and on the second

day of October, 1866, the mayor and common council of the city of San José, being then duly authorized by law to make conveyances of lands belonging to the city, executed and delivered to said Moody a deed of "remise, release, and quitclaim," purporting to convey said lot to him in fee. Said Moody and his successors in interest have ever since continued in the actual, open, notorious, exclusive possession of the said lot as before, and of the whole thereof, claiming title thereto in fee against the whole world, and paying the taxes thereon. The present defendants are the successors in interest to the title and possession of said Moody.

There is no dispute that there was an entire failure to perform the condition subsequent, upon which the grant to Leo Norris was made. The first question is, whether the breach of that condition subsequent of itself revested the title in the pueblo or its successor so as to enable it to pass title by a subsequent grant, without denouncement under the civil law, or office found under the common law.

Under the common law, it may be conceded, without argument, that the mere breach of the condition would not revest the title so as to authorize a subsequent grant without office found. But this grant to Norris was made under the civil law July 12, 1847. That civil law continued to be "the law of the case," that is, the law governing this grant and its condition, until April 13, 1850,—the date of the adoption of the common law,— almost two years and nine months after the date of the grant, and one year and nine months after the breach of the condition was complete.

In the early history of this state, this court had occasion several times to consider this question of the necessity of denouncement, in order to revest title and authorize a reconveyance.

One of the cases in which that question was discussed was *Vanderslice* v. *Hanks*, 3 Cal. 27. That was a

case of the grant of a rancho direct from the Mexican government to the grantee,—a natural person. There was no limitation of time within which the condition subsequent was to be performed. The court held, and very properly, that a reasonable time must be allowed; that a reasonable time would depend upon the character of the grant and of the condition, and upon all the circumstances of the case; and applying the rule laid down by Blackstone (2 Bla. Com. 157), that if the conditions after the grant became impossible by the act of God, or the act of the feoffer himself, or were contrary to the law, or repugnant to the nature of the estate, the condition was void, and the estate vested. It was further held that as in that case there had been no denouncement by the Mexican government, that before a reasonable time had elapsed within which to perform the condition, the Mexican government—the feoffer—had become embroiled in a war with the United States, resulting in the conquest of the country by the latter, rendering it no longer possible to perform the condition, the estate had vested, notwithstanding the non-performance.

In the subsequent case of *Touchard* v. *Touchard*, 5 Cal. 307, the court, in referring to the case of *Vanderslice* v. *Hanks*, gave as a further reason for the ruling in that case, that, by express decree of the Mexican government, denouncement was the mode of taking advantage of the non-performance of subsequent conditions in cases of grants made by the government itself. But it further held that, as to grants made by municipal corporations, they must be construed in the same manner as those of natural persons, and that as a private natural person can grant lands upon conditions subsequent, and upon their non-performance resume the ownership, a municipal corporation can do the same.

But it is claimed by respondent, and was so held by the court below, in an opinion filed in the case, that *Touchard* v. *Touchard* has been overruled, and is no

longer authority for any purpose. This contention is founded upon the decision in the case of *Holliday* v. *West*, 6 Cal. 525. That case discusses, but does not in terms—nor do we think it does in legal effect—overrule *Touchard* v. *Touchard*. Referring to the last-named case, the court said: "In that case, a subsequent grant of a lot by a municipal corporation was held valid against an older grant, on the ground of the non-performance of the conditions by the elder grantee. The only question made there in favor of the first grant was that the Mexican law, which then prevailed, required the proceeding of denouncement before there could be a legal forfeiture of the grant. But we held that the proceeding only applied to grants made by the government, and was totally inapplicable to the contracts of private individuals. A denouncement was never made by the grantor, but always by some person who desired to obtain the land for himself." The fact affirmed and emphasized in the quotation just made is important to be borne in mind in our consideration of this contention of respondent, viz., that the question now under consideration in this case was the direct and only one involved in *Touchard* v. *Touchard*. The court then proceeds to discuss further and anew the question considered in the former case. It says: "The respondents insist, and so it was held by the district court, that in order to invalidate the first grant there must have been a re-entry by the first grantor, or some other notorious act, in order to show the intention by the grantor to forfeit the grant and resume the estate upon the ground of the non-performance of the conditions, and that the subsequent grant is no proof of such intention. *This position would be unassailable if we were at liberty to apply the principles of the common law to this case; but the facts all arose before the adoption of the common law, and must be governed by the rules of the civil law.*"

And after some discussion of the civil law, it says:

"*We discover no rule whatever at the civil law answering to the common-law doctrine of re-entry to produce a forfeiture.* It does not follow, however, that the system was destitute of principles which to an equal extent were potent to secure and enforce the rights of litigants in like cases. And so we find that, instead of an unbending rule which disregards material clashing circumstances, *each case was determined according to its own facts, by those principles which every system would admit to be the immutable laws of right and wrong.*"

Acting upon that principle of the civil law, the court proceeded to examine the case before it, and found that the lot in question had been granted in 1843 to one Bee; that he commenced in good faith to comply with the condition, — a condition usual to such grants, — that of building a house within one year; the breaking out of a revolution checked the progress of his building before it was completed; that all during the war, and even after the conquest, the lot was recognized as Bee's lot; that in January, 1847, one Pell applied. to the new alcalde for a grant of the lot, representing it as vacant, and secured a grant, but he never went into possession, and his grant was subsequently lost without having ever been recorded; that in 1849 the holders of the Bee title went into possession, when Pell undertook the recovery by suit, but was unable to do so; that in 1847 the alcalde found that he had been making mistakes in granting lots of which there were already outstanding grants, and he notified the parties in interest to appear and have their grants adjusted. Pell failed to appear, but Bee appeared and had possession redelivered to him. Under these circumstances the court held that Bee's title had never been forfeited.

Under the course of procedure and rulings of the court in this case, we fail to see how it can be held that this decision, either in terms or legal effect, overruled the case of *Touchard* v. *Touchard,* 5 Cal. 307. And yet

the court did say, in *Hart* v. *Burnett*, 15 Cal. 599, that *Touchard* v. *Touchard* had been overruled in *Holliday* v. *West* as to the only point really involved or decided in the case, and we are now asked to apply to that statement the doctrine of *stare decisis.* But *Hart* v. *Burnett* furnishes us the very best of reasons why we should not make such an application of the rule. In that case (p. 598), the court says: " A decision is *not even authority* except upon the point actually passed upon by the court and directly involved in the case. But even then, the mere reasoning of the court is not authority. The point decided by the court, and which the reasoning illustrates and explains, constitutes a judicial precedent. The books are full of cases in which learned judges have earnestly deprecated the attempt to urge the mere *dicta* or the arguments of judges as authoritative expositions of the law. Chief Justice Marshall, in the case of *Cohens* v. *State of Virginia*, 6 Wheat. 399, thus defines the rule: 'It is a maxim not to be disregarded, that general expressions in every opinion are to be taken in connection with the case in which these expressions are used; if they go beyond the case, they may be respected, but they ought not to control the judgment in a subsequent suit where the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom investigated.' Chief Justice Best, in *Richardson* v. *Mellish*, 2 Bing. 248, says: ' The expressions of every judge must be taken with reference to the case on which he decides, otherwise the law will get into extreme confusion. This is what we are to look to in all cases. The manner in which he is arguing is not the thing; it is the principle he is deciding.' "

Applying the principle thus plainly stated to what is

said immediately following in the same case, as to what was decided and the effect of the decisions rendered in *Touchard* v. *Touchard* and *Holliday* v. *West,* and we find that it is " not even authority " upon the point actually passed upon by the court in either of the former cases, or directly involved therein.

There were three questions involved and necessary to be decided in *Hart* v. *Burnett:* 1. Was the city of San Francisco a pueblo or the successor to a pueblo? 2. If yea, then was she possessed of a certain right or title in lands, as such, within certain prescribed limits? 3. If both the other questions were answered in the affirmative, then were the lands in which she had such right or title by virtue of her character as a pueblo or the successor to a pueblo subject to seizure and sale under execution against the city? In the unsettled condition of the law at that time, it was both natural and proper that the court should enter very fully into its reasons for the affirmative conclusion which it reached upon each of the two first of these questions, and the negative conclusion reached upon the last of them. The temptation was also naturally strong to enter into a general discussion of all the powers of a pueblo, or its successor, and it will be found upon examination that the court has occupied more than fifty pages in the discussion of general powers and rights of a pueblo, which were entirely unnecessary to the determination of the question of the character of its right in lands, or of whether or not they were subject to seizure and sale under execution. This was especially so of its discussion of the question of denouncement and forfeiture. It was a discussion wholly foreign to the determination of the fact that the lands held by the pueblo were held in trust, and were not, therefore, subject to seizure and sale under execution,—so foreign to it that anything which was said upon the subject is not entitled, according to the

rule laid down by the same court in the same case, to be cited as an authority.

But even according to *Hart* v. *Burnett*, 15 Cal. 599, the case of *Holliday* v. *West*, 6 Cal. 525, is authority for the proposition that formal denouncement was not necessary in case of forfeiture for non-performance of condition subsequent in an alcalde grant, and also for the proposition that, according to the civil law, the court was to *view the facts of each particular case,* and from those facts determine the right " by those principles which every system would admit to be the immutable laws of right and wrong."

In this case it is conceded that there was no attempt to perform the condition °subsequent; that there was neither civil war, insurrection, or anything else to prevent or excuse performance; that for nearly forty years the holder of this alcalde grant has remained silent, asserting no claim to the lot, and for thirty years of that time has seen others actually occupying the premises, improving them, building tenements upon them (for the place has long been occupied by tenants, which implies the existence of tenements), and he only now asserts a right after the property has been made and become of great value, and upon the assumption that the recent issue of a patent for the pueblo lands has given him a right of action to recover what in fact he had forfeited by the terms of his own title deed forty years before.

Under these circumstances, we have no hesitation in holding that, under the civil law, interpreted as the courts of the country under the civil law were accustomed to interpret it, he had forfeited all right to this lot before the adoption of the common law, and neither that adoption, nor any event that has occurred since, has restored to him any right in the premises.

This is decisive of this case; but there is one other ground upon which we are equally confident that the plaintiff ought not to recover. One of the defenses to

the action is the statute of limitations. The patent for these pueblo lands was issued June 4, 1884. This complaint was filed May 4, 1885. The contention is, that the statute of limitations did not commence to run until the patent was issued. This court has several times so held, and one of the cases in which it announced that rule was that of *Beach* v. *Gabriel*, 29 Cal. 580, a case involving a lot in this same pueblo. But a careful examination of the several statutes of limitation passed at different times in this state show that the rule should always have been subject to a certain qualification or exception. No such rule prevailed, or was authorized under the statute of 1850. . The first statute placing any such limitation upon the time when the limitation should commence to run was that of 1855 (Stats. 1855, p. 109), which provided that action could be maintained, where the title was derived from the Spanish or Mexican government, if commenced within five years from the time of final confirmation of the title by the government of the United States or its legally constituted authorities. In 1863 this statute was again amended (Stats. 1863, p. 327), so that where the title has not been finally confirmed more that five years before the passage of the act, action might be maintained if brought within five years from that date, providing, however, that nothing therein contained should operate to enlarge or extend the time allowed by the act, of which this was amendatory, where confirmation had been had before the passage of this act. "Final confirmation" was defined by the next section of this act to be the issue of the patent by the government of the United States, *or* the final determination of the official survey under the provisions of the act of Congress to regulate the jurisdiction of the district courts of the United States in California in regard to the survey and location of private land claims, approved June 14, 1860. This alternative clause seems to have been generally overlooked, and not unnaturally so, since

the patent would, of course, be the very highest evidence of final confirmation.  The court had occasion to discuss and consider this act of 1863 in the case of the *City of San José* v. *Trimble,* 41 Cal. 536,—a case brought by the city itself for the recovery, by virtue of its right as a pueblo, of a portion of the pueblo land within its limits. In that case the court held that, under the provisions of this act, as the defendant had been five years in adverse possession, the plaintiff could not recover, and this notwithstanding the patent had not yet issued.

The final decree of confirmation of the lands of this pueblo was entered June 13, 1866, and in that decree the boundaries of the lands are fixed and established, definite and certain, by monuments and courses.  Not even monuments were required to be established, or any course authorized to be varied, by any subsequent survey. From this fact (and there is nothing in the record to militate against this view) it would seem that this was a final confirmation and determination of the survey of those lands.  And this conclusion would account for the ruling in *San José* v. *Trimble, supra.*  Whether that be the reason for the ruling or not, if the decision in *San José* v. *Trimble, supra,* was correct, then this plaintiff's right of action was barred by the statute of limitations, even as it stood before the adoption of the codes.

Under the codes, plaintiff's right of action is clearly barred.  The codes went into effect January 1, 1873. They do not contain, and never have contained, any provision such as that found in the former statute of limitations, giving to claimants under Spanish or Mexican grants five years after confirmation of either grant or survey, or after patent, in which to bring or maintain an action.  If the statute of limitations never commenced to run against this plaintiff before, it did so commence to run when the codes went into effect, and had run more than twice over before the commencement of this action.

Judgment reversed, with directions to the court below to enter judgment on the findings in favor of defendants.

SHARPSTEIN, J., concurred.

THORNTON, J., concurring.—I concur in the judgment, on the ground that the cause of action is barred under the Code of Civil Procedure, which went into effect on the 1st of January, 1873.

PATERSON, J., and McFARLAND, J., concurred in the judgment on the ground first discussed by Mr. Justice Fox.