## INNIS *vs.* THE STEAMER SENATOR.

An appeal may be taken from a judgment of the district court, without moving for a new trial in that court.

A vessel in the harbor of San Francisco, moored in the usual track of bay and river steamers, should set a light and keep a watch in a dark night, or she cannot recover damages for an injury sustained by being run into by a steamer, where there was neither gross negligence nor intentional wrong on the part of the steamer. The want of such watch and light is to be deemed negligence *per se*, and the court should instruct the jury in such case to find a verdict in favor of the defendant. *Per* HASTINGS, Ch. J.

The declarations of an agent, when but the bare narration of an act which had already taken place and was fully ended, do not form a part of the *res gestæ*, and are inadmissible in evidence against his principal. *Per* BENNETT, J.

Where improper evidence is submitted to the jury, under objection, a new trial will be granted on appeal, unless the court can see that such evidence could not possibly have had an effect upon the jury prejudicial to the appellant.

APPEAL from the district court of the district of San Francisco. The facts are stated in the subjoined opinions.

*M. H. McAllister*, for the plaintiff.

*Allen T. Wilson*, for the defendant.

*By the Court*, HASTINGS, Ch. J. I think a new trial should have been moved for by the defendant's counsel, and that without such motion made, and overruled, in no case should this court interrupt the verdict of a jury; but this court, in several cases, myself dissenting, has determined otherwise. It appears that the ship *Rhode Island* was freighted mainly with lumber, and moored near, if not in, the usual track, or in the line of steamers and other vessels entering the harbor, further down the bay than where vessels usually discharge—that she exhibited no lights, and had no watch on her decks—that vessels on either side of her hoisted lights—that in this harbor some vessels, when moored, set a watch and lights, and some do not. Upon the

question whether it is customary or required by prudence to set a watch or hoist lights, there was conflicting testimony. At the time of the collision the atmosphere was hazy, and the vessel was obscured by the shadows of the hills. It is not contended that the accident was wilful or was occasioned by the gross negligence of those in command of the steamer *Senator*. It appears from the testimony of several witnesses on the lookout at the time, that the collision was merely accidental, and could not be avoided after the *Rhode Island* was first visible. The court gave nearly all the instructions asked on either side, there being twenty on the part of the defendant, which were all given but two.

It is contended on the part of the respondent, that the defendant cannot complain of the ruling of the court on these instructions; and on the part of the defendant, it is said the giving of all the instructions asked on either side had a tendency to mislead and confuse the minds of the jury. It is evident that the instructions of the court were favorable to the defendant, and from the testimony of all the witnesses it is clear that the *Rhode Island*, moored where she was, without lights or a watch, was in fault; and, for the reason that the jury found against the instruction of the court, and against the evidence which clearly shows some negligence on the part of the *Rhode Island*, the verdict should have been set aside and a new trial granted. In the case of *Simpson* v. *Hand*, (6 *Wharton's Rep.* 324,) the court say, as contended by counsel, that " a vessel is doubtless not bound " to show a light when she is moored out of harm's way, and that " it was proved, in that case, to be a custom of the river, (Dela-" ware,) in nights of unusual darkness, to set a light. The " *Rhode Island* was not so moored, and no custom is so well " established in this harbor as to be recognized as the law of the " harbor." I think the court should have instructed the jury that want of a light and a watch, in the position of the *Rhode Island*, was such negligence on her part, as to prevent a recovery. In the case above cited, Chief Justice GIBSON says, " Indeed, the hoisting of a light is a precaution so imperiously " demanded by prudence, that I know not how the omission of

" it could be qualified by circumstances, any more than could
" the leaving of a crate of china in the track of a railroad car;
" or how it could be considered other than as negligence *per se.*"
In that case, it was clearly proved that defendant's vessel was
in fault, and that, being under sail, the mate discovered the
*Thorn* in time to avoid her and prevent the collision, but
neglected to do so; yet the court, upon the principle that the
*Thorn* was in fault for want of a visible light and a watch, de-
cided that the plaintiff could not recover. So we decided in
the case of the *Caleb Curtis,* at the last term. It is not to be
understood that all vessels moored should set a watch or exhibit
lights, but such only as are moored or anchored in " harm's
way," that is, in or near the usual track of daily steamers, or
the usual entrance to any part of the harbor.

I think, therefore, the judgment should be reversed.

BENNETT, J. This was an action brought by the plaintiff to
recover damages resulting from a collision between the steamer
*Senator* and the ship *Rhode Island.* At the trial, evidence was
given, after exception by the defendant, of statements made
by the master of the *Senator,* the morning after the collision
took place. These declarations were, that the *Senator* ran into
the *Rhode Island* because the captain of the *Senator* was de-
ceived by lights carried by two vessels, one on each side of the
*Rhode Island*—that he saw the *Rhode Island,* but supposed she
was further off than she actually was—that she was concealed
under the shadow of the hill, and he had not time to back the
steamboat and prevent the collision.

There can be no doubt about the inadmissibility of this evi-
dence. The declarations of an agent are not competent, except
when they form a part of the *res gestæ;* and the declarations
objected to, in this case, form no part of the *res gestæ,* but are
a mere narration of an event which had taken place and was
fully ended. (*Story on Agency, sec.* 135 *to* 138; *Thallhimer* v.
*Brinckerhoff,* 4 *Wend.* 394; *Hubbard* v. *Elmer,* 7 *id.* 446;
*Mateer* v. *Brown, decided in this court, ante, p.* 221.)

The counsel for the plaintiff, however, says, that although this

evidence may have been inadmissible, it could not have prejudiced the defendant, because the master was himself called afterwards and testified in the cause. If his testimony were, in truth, the same as his declarations proved, it would have resulted that the declarations could have had no influence on the verdict of the jury. But I think the two are not so entirely the same as to warrant us in saying that the declarations could not possibly have operated unfavorably to the defendant. Upon this ground, and this alone, I think a new trial should be granted.

The other questions raised at the trial were properly disposed of, and taking the whole charge of the court together, the case was fairly submitted to the jury.

New trial ordered, costs to abide event. (a)

1   462
97   182

---

(a) Mr. Justice LYONS was not present at the argument of this case.