THE PEOPLE *v.* RIVERA.

APPEAL from the District Court of Mayagüez.

No. 18.—Decided June 12, 1907.

TRIAL—POSTPONEMENT THEREOF.—Failure on the part of a witness to appear considered necessary in order to clear up the facts in the case is sufficient for the postponement of the trial.

INSTRUCTIONS OF THE COURT—MURDER IN THE FIRST DEGREE—EVIDENCE OF EX-
TENUATING CIRCUMSTANCES.—The following instruction given by the court
to the jury has been approved as being in accordance with law and not pre-
judicial to the rights of the accused: "As soon, gentlemen of the jury, as it
is proved that death has occurred, that death has been caused, that the crime
has been perpetrated, it is incumbent upon the accused to prove that in the
commission of the crime there have been extenuating circumstances or circum-
stances which would justify or exempt him from criminal liability, unless
from the evidence introduced by the prosecution the existence of such ex-
tenuating circumstances appears, or the evidence of The People of Porto Rico
tends to show the existence of such circumstances."

EVIDENCE—RULES OF EVIDENCE IN CIVIL AND CRIMINAL CASES.—The rules govern-
ing the introduction of evidence in civil cases are applicable also in criminal
cases.

ID.—AGE OF WITNESSES ALLOWED TO TESTIFY—CHILDREN UNDER TEN YEARS OF
AGE.—The law does not specify the age witnesses must be in order that
their testimony may be admitted in evidence, but in order that children
under 10 years of age may be allowed to testify as witnesses, it is necessary
that before administering the oath to them their capacity to testify be de-
termined, by an examination as to the extent of their intelligence, the
signification of the oath they must take, and their perceptive faculties as
regards the facts about which they are to testify, and their ability to state
them correctly.

ID.—HEARSAY EVIDENCE.—Statements made by the deceased days before the
commission of the crime are not admissible in evidence, because such state-
ments are regarded as hearsay evidence.

ID.—APPEAL—NEW TRIAL.—The admission in evidence of the testimony of a
child under 10 years of age, without first determining his capacity to testify,
or the admission of any other important evidence, whereby the substantial
rights of the accused may be prejudiced, constitutes grounds for the reversal
of the judgment appealed from and the granting of a new trial.

The facts are stated in the opinion.

*Mr. Travieso* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the
court.

On December 12, 1905, Benjamin J. Horton, *fiscal* of the
District Court for the Judicial District of Mayagüez, filed in
said court the following information:

"In the name and by the authority of The People of Porto
Rico, etc.

"The *fiscal* files an information against Eleuterio Rivera for the crime of murder in the first degree (felony) committed as follows:

"The said Eleuterio Rivera, between 7 and 8 o'clock on the morning of the 7th day of November of the present year 1905, in *barrio* 'Marías', of the municipality of Añasco, Judicial District of Mayagüez, Porto Rico, treacherously, deliberately and premeditatedly, and showing a preverted and malignant heart, illegally killed the woman Felicia García, making use of a knife or dagger and inflicting two wounds, one a slight wound on the third joint of the right index finger, and the other—which caused instant death—penetrating her right breast through the sixth intercostal space, piercing the left pulmonary parenchyma, completely passing through the heart and into the right lung.

"This act is contrary to the law for such case provided, and against the peace and dignity of The People of Porto Rico.—Benjamin J. Horton, District Fiscal.

"The foregoing information is based upon the testimony of witnesses examined under oath, and I solemnly believe that there is just cause for presenting the same to the court.—Benjamin J. Horton, District Fiscal.

"Signed and sworn to before me this 12th day of December, 1905.— Francisco Llavat, Secretary of the District Court of Mayagüez."

On the 1st day of March of the year 1906 following, the foregoing information having been read to Eleuterio Rivera in open court, he pleaded not guilty, and upon the day set for the continuation of the trial (March 24), the accused appeared through his attorney, Martín Travieso, and The People of Porto Rico through the *fiscal*, Libertad Torres Grau, who moved for a continuance because a witness whose testimony he considered to be of great importance for the purpose of clearing up the facts had failed to appear.

The court granted the motion and the hearing was continued until the 26th of the said month of March, at 9 o'clock in the morning.

On this day the case came on to be heard in its order on the calendar, The People of Porto Rico appearing through the *fiscal*, Libertad Torres Grau, and the accused through his attorney, Martín Travieso, who announced that they were

ready to proceed to trial. The jury was drawn and twelve good men, residents of the district, were selected and sworn in, in accordance with the law, to try the case. The evidence introduced by the *fiscal* and counsel for the defense was taken and heard, and the jury, after hearing the information filed by the *fiscal,* the plea of not guilty made by the accused, the evidence introduced by both parties, the arguments of the *fiscal* and counsel for the defense, and the instructions of the court, retired to deliberate, and returned and in open court, through its foreman, delivered the following written verdict:

"We, the jury, represented by the foreman, who signs this verdict, find the accused, Eleuterio Rivera, guilty of the crime of murder in the first degree."

In view of the foregoing verdict declaring the accused, Eleuterio Rivera, guilty of the crime of murder in the first degree, the court convicted him of that crime and set the 29th day of the said month of March for pronouncing sentence.

On that day the district court pronounced the following sentence:

"In the city of Mayagüez, on the 29th day of March, 1906, this being the day set by the court to pronounce sentence in the above-entitled cause, and taking into account the fact that the defendant was accused in open court by the district *fiscal* of the crime (felony) of murder in the first degree committed upon the person of Felicia García, a resident of the *barrio* of 'Marías', within the municipal jurisdiction of Añasco, which belongs to the Judicial District of Mayagüez; that at the arraignment the said defendant pleaded not guilty; that a day and hour for the trial having been set, it was held before a legally constituted jury, which rendered a verdict declaring the said defendant, Eleuterio Rivera, guilty of the crime of murder in the first degree; that the defendant was informed by the court of the nature of the accusation against him, of the allegations of the defense, and of the verdict found by the jury, and having been asked whether he had any legal cause to show why judgment should not be pronounced against him, he stated that 'he was not the author of the crime'. And this cause not being sufficient in the judgment of the court to prevent the pronouncement of judgment, it was overruled.

"Therefore, the court, in compliance with the provisions of the first paragraph of section 202 of the Penal Code in force—that is to say, 'every person guilty of murder in the first degree shall suffer death'—and in consideration of the fact that the defendant, Eleuterio Rivera, has been convicted of the crime of murder in the first degree, no extenuating or mitigating circumstances appearing in his favor, condemns the said Eleuterio Rivera to suffer the death penalty.

"In virtue thereof, the proper order is hereby directed to be issued to the marshal of the district court, Enrique F. Rossy, and in his absence, to any other officer of the court, commanding that the said convict be conducted from the common district jail, where he is now confined, to the departmental penitentiary in San Juan, Porto Rico, and there delivered to the officer in charge of the same.

"It is hereby further ordered and decreed that upon the day to be set in such order this judgment be executed within the walls of the said penitentiary, by hanging the convict by the neck until dead.

"And may Almighty God have mercy upon his soul.—Isidoro Soto Nussa, Judge of the District Court for the Judicial District of Mayagüez, Porto Rico."

From this judgment the accused, Eleuterio Rivera, took an appeal, through his attorney, Martín Travieso, notice of which was served by delivery of a copy thereof to the district *fiscal,* Torres Grau, on April 2, 1906, and two days thereafter—that is to say, on April 6—it was filed in the office of the secretary of the court.

The bill of exceptions prepared by counsel for the accused, Don Martín Travieso, having been prepared and signed by the judge, a transcript of the record, including a literal certified copy of the said bill of exceptions having been forwarded to this Supreme Court, as the 20 days provided for the appearance of the appellant having expired without any lawyer having presented himself to represent the accused, this Supreme Court appointed Attorney Antonio Álvarez Nava, who accepted the appointment and filed his brief praying for the reversal of the judgment, and the other proper legal pronouncements. At the oral hearing he maintained the allegations made in his brief, which were contested by the *fiscal,* who asked that the judgment be affirmed, with costs.

The principal basis of the argument of counsel for the accused made in his brief and subsequently at the oral hearing, is that the trial court having admitted in evidence for the prosecution the testimony of a child five years of age (Aurelio Vélez) without first having attempted to test his intellectual development in order to determine his capacity to testify as a witness; as also the testimony of Dr. Casaldúc, whose testimony was hearsay evidence in so far as the statements are concerned which he says deceased made to him on several occasions before her death, in regard to threats made by the defendant that he would kill her and that for this reason she did not resolve to discontinue her amorous relations with him, the accused was deprived of one of the most precious guarantees accorded him by the law to an impartial trail, and that for that reason the judgment should be reversed and the cause remanded for a new trial.

These allegations of counsel for the defense make it necessary for us to examine the exceptions noted at the trial by the attorney for the accused to the rulings of the court which appear in the bill of exceptions drawn and filed by counsel after judgment was pronounced, and which was approved and signed by the judge of the trial court, Honorable Isodoro Soto Nussa and included in the record, a copy of which reads as follows:

"*Bill of exceptions.*—This cause was called for trial on March 24, 1906.

"The jury was impaneled, and after the arraignment of the accused and after he had pleaded not guilty, the *fiscal* made an oral motion for the postponement of the trial as follows: 'I have just learned that the witness, Carmen Feliciano, has not come, and I do not dare to proceed to trial without this witness.' The court adjourned for five minutes, after which the session was resumed. The court thereupon made the following order:

" 'The testimony of the witness, Carmen Feliciano, being of great importance and the *fiscal* having stated that it will be absolutely impossible for him to proceed to trial without the appearance of this

witness, the court continues the trial of this case until 9 o'clock of this same' (*sic*).

"Counsel for defendant took an exception to this ruling of the court on the ground that the *fiscal* had not shown that the testimony of the absent witness was material and necessary for the continuation of the trial.

"During the testimony of the witness, Aurelio Vélez, a child five years of age, counsel for the defendant made the following motion:

" 'Before the witness continues to testify any further I desire that the court should examine him with a view to ascertaining whether he is capable of serving as a witness in this case, and in order that we may see whether he understands the significance of the oath which he has taken and the obligation which he has assumed to tell the truth.'

"To which the presiding judge replied: 'In regard to the capacity of this witness, I think that, from the result of his testimony, we will be able to determine the matter, and then the court will examine him upon each of the points with respect to which he has testified, and thus it will be seen whether he understands, not only the objects, but the nature thereof, so that, instead of being a proceeding of *a priori,* it will be a proceeding of *a posteriori.'*

"Counsel for the defendant replied: 'With all due respect I think the defendant has a right to insist that the examination of the witness be made *a priori,* before he proceeds with his testimony.'

"The court ruled as follows: 'The court says that it will be *a posteriori* because the object will be the same.'

"Counsel for the defendant took an exception to this ruling of the court.

"During the testimony of the expert, Dr. Eduardo Casaldúc, in regard to the condition of the wounds which caused the victim's death, the *fiscal* asked whether the deceased, Felicia García, who was one of his clients, had ever made any statements to him in regard to the life she led. Counsel for the defendant objected to the recital of those statements because, in his judgment, Dr. Casaldúc had been called in as an expert. The court ruled that Dr. Casaldúc might continue to testify as a witness, and when the witness commenced to relate the statements made to him by the deceased, counsl for the defense objected.

"The court replied: 'I believe that the intention of the *fiscal* is to attack the good reputation of the accused, and for this purpose the testimony is admitted.'

"Counsel for defendant: 'I do not believe the *fiscal* can do this until the accused has introduced evidence to prove his good reputation.'

"The court admitted the testimony of Dr. Casaldúc in regard to the statements made to him by the deceased, basing his action on the legal presumption that 'every accused person is presumed to bear a good reputation until the contrary is proven.'

"Counsel for the defendant took an exception to the ruling of the court.

"In his instructions to the jury the court said:

" 'As soon as it is proven, gentlemen of the jury, that death has been caused—that death has occurred, that the crime has been committed—the burden is upon the accused to prove that extenuating circumstances exist, or circumstances justifying the act or relieving him of criminal liability, unless from the evidence introduced by the *fiscal* the existence of such extenuating circumstances, or the absence of criminal liability is deduced, or unless the evidence introduced by The People of Porto Rico tends to show the existence of such circumstances.'

"Counsel for the defendant took an exception to this instruction.

"Mayagüez, April 4, 1906.—Martín Travieso, attorney for defendant."

Now then, to take up the exceptions noted by counsel for the defendant, the first—that is to say, the one relating to the postponement of the trial ordered by the court by reason of the failure of a witness to appear—we are of opinion that it is not worthy of consideration; because it has always been considered that the failure of a witness to appear, where such witness is considered necessary for the purpose of determining the facts sought to be proven, was a sufficient reason to warrant the postponement of the trial, and especially where the postponement is for one or two days more, as in the present case, no substantial right of the accused is disregarded.

The same must be said with respect to the instruction of the judge to the jury in regard to the provisions of section 247 of the Law of Criminal Procedure, because, aside from the fact that his instruction was perfectly correct because it

was in strict conformity to the provisions of law, the accused could not be prejudiced thereby.

This is not the case, however, with the other exception taken by defendant from the ruling of the judge admitting the testimony, among that of other witnesses for the prosecution, of a child five years of age named Aurelio Vélez, without first investigating his capacity to testify, in spite of the protests of counsel for the accused, who twice insisted that the capacity of the witness to testify should be determined before he gave his testimony in order to judge whether or not he understood the oath taken by him and the obligation imposed upon him thereby to tell the truth.

The judge overruled the motion of counsel for the defendant in regard to this matter, and held that such investigation should be made *a posteriori*—that is to say, after the witness had testified—because the result would always be the same, and in fact the witness did testify before the jury; but we do not know what his testimony was because the bill of exceptions does not contain his testimony, nor has a statement of facts, duly prepared, and taking exception to this ruling of the court, been presented here.

Our Law of Criminal Procedure does not provide what the age of witnesses must be in order that their testimony in criminal prosecutions may be admitted. Neither does the Penal Code contain any such provision; but section 1102 of the Penal Code of California provides that "The rules of evidence governing civil actions are also applicable to criminal actions, except as herein provided to the contrary."

Now then, according to section 38 of the Law of Evidence, approved March 9, 1905:

"All persons, without exception, otherwise than is specified in the two sections next following, who, having organs of sense, can perceive and, perceiving, can make known their perceptions to others, may be witnesses   *   *   *."

And according to section 39 the following persons cannot be witnesses:

"1. Those who are of unsound mind at the time of their production for examination.

"2. Chilren under 10 years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly."

Section 40 does not contain any other provision pertaining to the case.

From these provisions of the Law of Evidence it is therefore seen that in order that children under the age of 10 years may be allowed to testify in civil actions and by analogy in criminal prosecutions, it is necessary that they should appear to be capable of receiving true impressions of the facts respecting which they are examined and of relating them truly; and for this purpose it would appear to be logical that, before administering the oath and taking their testimony, the court should make some investigation into the capacity of the witness, because otherwise both proceedings might be ineffectual and without result to the serious injury or damage to the defendant because of the prejudice which may be created in the minds of the jurors by the testimony of a witness who does not understand the sanctity of an oath and the obligation imposed upon him thereby to tell the truth, or who does not fully understand the facts, or who is incapable of stating the same truly and clearly to the court.

In regard to this point, there are on record some very important decisions rendered by the Supreme Court of California.

In the case of *The People* v. *Bernal,* 10 Cal., 67, the defendant was prosecuted and convicted of the crime of rape committed upon the person of a child eight years of age. During the trial the court permitted, under the protest of the defendant, that the child be sworn and that she testify as a witness for the prosecution without first being examined to ascertain

whether or not she was competent or possessed the necessary capacity to testify. Establishing these precedents, the Supreme Court of California said:

"There is no precise age within which children are excluded from testifying. Their competency is to be determined, not by their age, but by the degree of their understanding and knowledge. It is essential that they should possess sufficient intelligence to receive just impressions of the facts respecting which they are examined, sufficient capacity to relate them correctly, and sufficient instruction to appreciate the nature and obligation of an oath. It is for the court to decide the question of their competency when they are offered as witnesses. If over 14 years of age, the presumption is that they possess the requisite knowledge and understanding; but, if under that age, the presumption is otherwise, and it must be removed upon their examination by the court, or under its direction and in its presence, before they can be sworn  *  *  *.

"Judgment reversed and cause remanded for a new trial."

In the case of *The [People]* v. *Suwist,* 136 Cal., 520, the court said:

"The competency of a young boy six years old as a prosecuting witness, upon a charge of an assault with intent to commit the infamous crime against nature, is for the trial court to determine, after a preliminary examination without the hearing of the jury to test his intelligence, and where such an examination disclosed his capacity to understand what was done to him and to relate it truly, the discretion of the trial court cannot be said to have been abused in allowing his testimony."

In this case an examination was neither made to test the intelligence of the child Aureli Vélez, who was introduced by the *fiscal* as a witness for the prosecution, nor did the judge make any statement whatever with respect to his capacity; and notwithstanding the child testified before the jury.

In the case of *The People* v. *Baldwin,* 117 Cal., 244, the court held:

"The admission of the testimony of a young girl, as the prosecuting witness, against an objection for want of sufficient age, is discretion-

ary; and where the court had examined the witness upon a previous trial and then became satisfied as to her competency, it was not necessary to reexamine her upon a succeeding trial; and where the defendant did not ask for a reexamination, or for the privilege of examining her as to her competency, it is no abuse of discretion to admit her testimony.''

From these decisions of the Supreme Court of California it therefore appears to be an incontrovertible doctrine that no witness under 10 years of age should be allowed to testify before the jury, unless it appears from an investigation previously made by the court to determine his capacity that he possesses the necessary perceptive powers to enable him to understand and appreciate the facts and state the same clearly and truthfully.

With respect to the testimony of Dr. Casaldúc, to which as we have already seen, counsel for the defendant took an exception during the trial, because of the fact that the judge permitted him to testify in regard to certain matters revealed to him by the deceased upon different occasions before her death, we are of the opinion that the judge, in permitting the witness to relate those matters, committed a serious error, because, although there was no reason why Dr. Casaldúc should not testify as a witness at the same time that he testified as an expert, he should not have been permitted to testify in regard to statements made to him by the deceased, inasmuch as hearsay testimony is never admissible either in criminal or civil actions; and in this case we must presume that those statements were not favorable to the accused when the judge admitted the same in evidence, because he believed that thereby the *fiscal* could show previous bad conduct on the part of the accused in order thus to destroy the presumption established by law in his favor, that he should be presumed to be a man of good moral character in the absence of proof to the contrary.

So that in violation of the general principle of law that heresay evidence is not admissble, Dr. Casaldúc was permitted to relate statements made to him by the deceased, Felicia García, not for the purpose of favoring the defendant (in which case up to a certain point the ruling of the judge might have been plausible), but for the purpose of prejudicing his interests in order to prove his previous bad conduct, and thus destroy the presumption established by the law in his favor that he was a man of good character. The error could not be more serious or evident.

If the matters revealed by the unfortunate Felicia Garcia had been so revealed to Dr. Casaldúc a few moments before her death and as she was about to appear in the presence of the Supreme Judge, we might possibly permit the same to appear in the record; but under the circumstances in which, according to the statement of the witness, these matters were made known by the deceased days before the incident which resulted in her death, without having been sworn, and in view of the danger that such statements may have been inspired by the indignation which she felt by reason of the cruel conduct of the accused toward her, in the presence of such danger those statements should not have been heard by the jury, nor should they have been made matters of record.

The other violations of law mentioned by counsel for defendant in his brief filed in this Supreme Court, are absolutely of no importance.

That the judgment should have been rendered outside of the period provided therefor by section 309 of the Code of Criminal Procedure, which is one of the violations of law alleged by the defense, is not worthy of consideration because it is based on an erroneous translation of section 309 of the said Code of Procedure, as we have heretofore held on several occasions; and in regard to the alleged violation of sections 236 and 237 of the said Code of Criminal Procedure, as we have not before us a complete statement of the case, ap-

proved by the judge, which would permit us to make a careful examination of the evidence, we cannot determine whether or not the verdict and the judgment are in accordance with the provisions above cited of the Code of Procedure.

However, although these allegations of counsel for the defense are absolutely of no importance, the same cannot be said in respect to the error committed by the trial court in permitting a child five years of age, Aurelio Vélez, to testify as a witness for the prosecution, who because of his youth should have been considered incapable of testifying, unless his capacity so to do had been fully shown, and in admitting the hearsay evidence given by Dr. Casaldúc.

The following decisions of the Supreme Court of California upon this point are also very interesting.

In the case of *Santillan* v. *Moses,* 1 Cal., 92, the court held:

"If improper evidence is permitted to be given to the jury a new trial will be granted, unless the court can see that such evidence could have had no influence upon the verdict."

In the case of *Innis* v. *The Senator,* 1 Cal., 459, the court also held:

"Where improper evidence is submitted to the jury, under objection, a new trial will be granted on appeal, unless the court can see that such evidence could not possibly have had an effect upon the jury prejudicial to the appellant."

In this case we cannot determine whether or not the testimony of the witnesses for the prosecution, the child Aurelio Vélez and Dr. Casaldúc, could have had any influence upon the jury prejudical to the accused, because we do not know what that testimony was; but by the same token that it may not have influenced the jury, it also may have influenced it, and this is sufficient to warrant us in considering the substantial rights of the accused to have been impaired by the admission of that improper evidence.

But this is not all; the Supreme Court of California has held in the case of *Spanagel* v. *Dellinger,* 38 Cal., 278, that:

"It is error for the court which tried a cause, without a jury, to deny a motion for a new trial, when it admits that improper evidence was received on the trial, even though in its opinion the finding and judgment would have been the same if the improper testimony had not been received."

So, if in that case the Supreme Court of California considered it proper to reverse the judgment and remand the cause for a new trial, because improper evidence was admitted, even though in the opinion of the trial court the result would have been the same, in the present case there is more reason for this court to render a similar decision in the absence of any means whereby to determine whether or not the verdcit of the jury would have been the same, even if the testimony of the said witnesses had been excluded.

Now then, in accordance with the provisions of section 303 of the Code of Criminal Procedure, one of the cases in which a new trial will be granted is precisely "when the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial".

Section 363 of the same law also authorizes this Supreme Court in cases of appeal from judgments rendered in criminal cases to review any intermediate order or ruling involving the merits of the case or which may have affected the judgment; and according to the following section it may also order a new trial, if it should consider such action to be just and proper.

Finally, the Act of the Legislative Assembly of this Island of May 30, 1904, confirms and ratifies the provisions of the above cited sections of the Code of Criminal Procedure in providing that—

"Whenever it appears from the record in any criminal case upon appeal in the Supreme Court, that any requirement of the law has

been disregarded by the trial court, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of either of the parties and was duly excepted to in the trial court: *Provided, however,* That the appellate court may take cognizance of the fundamental errors appearing in the record, although not excepted to, and render such judgment thereon as the facts and the law may require.''

Wherefore, in view of all the considerations hereinbefore expressed this court is of opinion that it should reverse the judgment appealed from, rendered in this case on March 29, 1906, by the District Court for the Judicial District of Mayagüez, and remand the same for a new trial.

*New trial ordered.*

Justices Hernández and MacLeary concurred.

Justices Figueras and Wolf concurred in the result, but not in all the grounds of the foregoing decision.