[L.A. No. 30277. In Bank. Mar. 31, 1975.]

NGA LI, Plaintiff and Appellant, v.
YELLOW CAB COMPANY OF CALIFORNIA et al.,
Defendants and Respondents.

**COUNSEL**

Hall, Moore & Norkin and Joseph E. Hall for Plaintiff and Appellant.

Mestad & Sanborn, John B. Mestad, Robert E. Cartwright, Edward I. Pollock, William H. Lally, Stephen I. Zetterberg, Robert G. Beloud,

David B. Baum and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Hagenbaugh & Murphy, Herbert. F. Blanck and William D. Stewart for Defendants and Respondents.

Ives, Kirwan & Dibble, Martin J. Kirwan, Robert A. Seligson, Gilbert, Kelly, Crowley & Jennett, Roger E. Kelly, Ellis J. Horvitz and Arthur E. Schwimmer as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

SULLIVAN, J.—In this case we address the grave and recurrent question whether we should judicially declare no longer applicable in California courts the doctrine of contributory negligence, which bars all recovery when the plaintiff's negligent conduct has contributed as a legal cause in any degree to the harm suffered by him, and hold that it must give way to a system of comparative negligence, which assesses liability in direct proportion to fault. As we explain in detail *infra,* we conclude that we should. In the course of reaching our ultimate decision we conclude that: (1) The doctrine of comparative negligence is preferable to the "all-or-nothing" doctrine of contributory negligence from the point of view of logic, practical experience, and fundamental justice; (2) judicial action in this area is not precluded by the presence of section 1714 of the Civil Code, which has been said to "codify" the "all-or-nothing" rule and to render it immune from attack in the courts except on constitutional grounds; (3) given the possibility of judicial action, certain practical difficulties attendant upon the adoption of comparative negligence should not dissuade us from charting a new course—leaving the resolution of some of these problems to future judicial or legislative action; (4) the doctrine of comparative negligence should be applied in this state in its so-called "pure" form under which the assessment of liability in proportion to fault proceeds in spite of the fact that the plaintiff is equally at fault as or more at fault than the defendant; and finally (5) this new rule should be given a limited retrospective application.

The accident here in question occurred near the intersection of Alvarado Street and Third Street in Los Angeles. At this intersection

Third Street runs in a generally east-west direction along the crest of a hill, and Alvarado Street, running generally north and south, rises gently to the crest from either direction. At approximately 9 p.m. on November 21, 1968, plaintiff Nga Li was proceeding northbound on Alvarado in her 1967 Oldsmobile. She was in the inside lane, and about 70 feet before she reached the Third Street intersection she stopped and then began a left turn across the three southbound lanes of Alvarado, intending to enter the driveway of a service station. At this time defendant Robert Phillips, an employee of defendant Yellow Cab Company, was driving a company-owned taxicab southbound in the middle lane on Alvarado. He came over the crest of the hill, passed through the intersection, and collided with the right rear portion of plaintiff's automobile, resulting in personal injuries to plaintiff as well as considerable damage to the automobile.

The court, sitting without a jury, found as facts that defendant Phillips was traveling at approximately 30 miles per hour when he entered the intersection, that such speed was unsafe at that time and place, and that the traffic light controlling southbound traffic at the intersection was yellow when defendant Phillips drove into the intersection. It also found, however, that plaintiff's left turn across the southbound lanes of Alvarado "was made at a time when a vehicle was approaching from the opposite direction so close as to constitute an immediate hazard." The dispositive conclusion of law was as follows: "That the driving of NGA LI was negligent, that such negligence was a proximate cause of the collision, and that she is barred from recovery by reason of such contributory negligence." Judgment for defendants was entered accordingly.

## I

"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff's harm." (Rest. 2d Torts, § 463.) Thus the American Law Institute, in its second restatement of the law, describes the kind of conduct on the part of one seeking recovery for damage caused by negligence which renders him subject to the doctrine of contributory negligence. What the effect of such conduct will be is left to a further section, which states the doctrine in its clearest essence: "Except where the defendant has the last clear chance, the plaintiff's contributory negligence *bars recovery* against a

defendant whose negligent conduct would otherwise make him liable to the plaintiff for the harm sustained by him." (Rest. 2d Torts, § 467.) (Italics added.)

This rule, rooted in the long-standing principle that one should not recover from another for damages brought upon oneself (see *Baltimore & P.R. Co.* v. *Jones* (1877) 95 U.S. 439, 442 [24 L.Ed. 506, 507]; *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 192 [288 P.2d 12, 289 P.2d 242]), has been the law of this state from its beginning. (See *Innis* v. *The Steamer Senator* (1851) 1 Cal. 459, 460-461; *Griswold* v. *Sharpe* (1852) 2 Cal. 17, 23-24; *Richmond* v. *Sacramento Valley Railroad Company* (1861) 18 Cal. 351, 356-358; *Gay* v. *Winter* (1867) 34 Cal. 153, 162-163; *Needham* v. *S. F. & S. J. R. Co.* (1869) 37 Cal. 409, 417-423.) Although criticized almost from the outset for the harshness of its operation, it has weathered numerous attacks, in both the legislative[1] and the judicial[2] arenas, seeking its amelioration or repudiation. We have undertaken a thorough reexamination of the matter, giving particular attention to the common law and statutory sources of the subject doctrine in this state. As we have indicated, this reexamination leads us to the conclusion that the "all-or-nothing" rule of contributory negligence can be and ought to be superseded by a rule which assesses liability in proportion to fault.

It is unnecessary for us to catalogue the enormous amount of critical comment that has been directed over the years against the "all-or-nothing" approach of the doctrine of contributory negligence. The essence of that criticism has been constant and clear: the doctrine is inequitable in its operation because it fails to distribute responsibility in proportion to fault.[3] Against this have been raised several arguments in

---

[1](See, for example, Sen. Bill No. 43 (1971 Reg. Sess.); Assem. Bill No. 694 (1971 Reg. Sess.); Sen. Bill No. 132 (1972 Reg. Sess.); Assem. Bill No. 102 (1972 Reg. Sess.); Sen. Bill No. 10 (1973 Reg. Sess.); Sen. Bill No. 557 (1973 Reg. Sess.); Assem. Bill No. 50 (1973 Reg. Sess.); Assem. Bill No. 801 (1973 Reg. Sess.); Assem. Bill No. 1666 (1973 Reg. Sess.); Sen. Bill No. 2021 (1974 Reg. Sess.).)

[2]See *Tucker* v. *United Railroads* (1916) 171 Cal. 702, 704-705 [154 P. 835]; *Sego* v. *Southern Pacific Co.* (1902) 137 Cal. 405, 407 [70 P. 279]; *Summers* v. *Burdick* (1961) 191 Cal.App.2d 464, 471 [13 Cal.Rptr. 68]; *Haerdter* v. *Johnson* (1949) 92 Cal.App.2d 547, 553 [207 P.2d 855].

[3]Dean Prosser states the kernel of critical comment in these terms: "It [the rule] places upon one party the entire burden of a loss for which two are, by hypothesis, responsible." (Prosser, Torts (4th ed. 1971) § 67, p. 433.) Harper and James express the same basic idea: "[T]here is no justification—in either policy or doctrine—for the rule of contributory negligence, except for the feeling that if one man is to be held liable because of his fault, then the fault of him who seeks to enforce that liability should also be considered. But this notion does not require the all-or-nothing rule, which would exonerate a very negligent defendant for even the slight fault of his victim. The logical corollary of the fault principle would be a rule of comparative or proportional

justification, but none have proved even remotely adequate to the task.[4] The basic objection to the doctrine—grounded in the primal concept that in a system in which liability is based on fault, the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness.

Furthermore, practical experience with the application by juries of the doctrine of contributory negligence has added its weight to analyses of its inherent shortcomings: "Every trial lawyer is well aware that juries often do in fact allow recovery in cases of contributory negligence, and that the compromise in the jury room does result in some diminution of the damages because of the plaintiff's fault. But the process is at best a haphazard and most unsatisfactory one." (Prosser, *Comparative Negligence, supra,* p. 4; fn. omitted.) (See also Prosser, Torts, *supra,* § 67, pp. 436-437; Comments of Malone and Wade in *Comments on Maki v.*

---

negligence, not the present rule." (2 Harper & James, The Law of Torts (1956) § 22.3, p. 1207.)

[4]Dean Prosser, in a 1953 law review article on the subject which still enjoys considerable influence, addressed himself to the commonly advanced justificatory arguments in the following terms: "There has been much speculation as to why the rule thus declared found such ready acceptance in later decisions, both in England and in the United States. The explanations given by the courts themselves never have carried much conviction. Most of the decisions have talked about 'proximate cause,' saying that the plaintiff's 'negligence is an intervening, insulating cause between the defendant's negligence and the injury. But this cannot be supported unless a meaning is assigned to proximate cause which is found nowhere else. If two automobiles collide and injure a bystander, the negligence of one driver is not held to be a superseding cause which relieves the other of liability; and there is no visible reason for any different conclusion when the action is by one driver against the other. It has been said that the defense has a penal basis, and is intended to punish the plaintiff for his own misconduct; or that the court will not aid one who is himself at fault, and he must come into court with clean hands. But this is no explanation of the many cases, particularly those of the last clear chance, in which a plaintiff clearly at fault is permitted to recover. It has been said that the rule is intended to discourage accidents, by denying recovery to those who fail to use proper care for their own safety; but the assumption that the speeding motorist is, or should be, meditating on the possible failure of a lawsuit for his possible injuries lacks all reality, and it is quite as reasonable to say that the rule promotes accidents by encouraging the negligent defendant. Probably the true explanation lies merely in the highly individualistic attitude of the common law of the early nineteenth century. The period of development of contributory negligence was that of the industrial revolution, and there is reason to think that the courts found in this defense, along with the concepts of duty and proximate cause, a convenient instrument of control over the jury, by which the liabilities of rapidly growing industry were curbed and kept within bounds." (Prosser, *Comparative Negligence* (1953) 41 Cal.L.Rev. 1, 3-4; fns. omitted. For a more extensive consideration of the same subject, see 2 Harper & James, *supra,* § 22.2, pp. 1199-1207.)

To be distinguished from arguments raised in justification of the "all or nothing" rule are practical considerations which have been said to counsel against the adoption of a fairer and more logical alternative. The latter considerations will be discussed in a subsequent portion of this opinion.

*Frelk—Comparative v. Contributory Negligence: Should the Court or Legislature Decide?* (1968) 21 Vand.L.Rev. 889, at pp. 934, 943; Ulman, A Judge Takes the Stand (1933) pp. 30-34; cf. Comment of Kalven, 21 Vand.L.Rev. 889, 901-904.) It is manifest that this state of affairs, viewed from the standpoint of the health and vitality of the legal process, can only detract from public confidence in the ability of law and legal institutions to assign liability on a just and consistent basis. (See Keeton, *Creative Continuity in the Law of Torts* (1962) 75 Harv.L.Rev. 463, 505; Comment of Keeton in *Comments on Maki v. Frelk, supra,* 21 Vand.L. Rev. 889, at p. 916;[5] Note (1974) 21 U.C.L.A. L.Rev. 1566, 1596-1597.)

It is in view of these theoretical and practical considerations that to this date 25 states,[6] have abrogated the "all-or-nothing" rule of contributory negligence and have enacted in its place general apportionment *statutes* calculated in one manner or another to assess liability in proportion to fault. In 1973 these states were joined by Florida, which effected the same result by *judicial* decision. (*Hoffman* v. *Jones* (Fla. 1973) 280 So.2d 431.) We are likewise persuaded that logic, practical experience, and fundamental justice counsel against the retention of the

---

[5]Professor Keeton states the matter as follows in his Vanderbilt Law Review comment: "In relation to contributory negligence, as elsewhere in the law, uncertainty and lack of evenhandedness are produced by casuistic distinctions. This has happened, for example, in doctrines of last clear chance and in distinctions between what is enough to sustain a finding of primary negligence and what more is required to sustain a finding of contributory negligence. Perhaps even more significant, however, is the casuistry of tolerating blatant jury departure from evenhanded application of the legal rules of negligence and contributory negligence, with the consequence that a kind of rough apportionment of· damages occurs, but in unpoliced, irregular, and unreasonably discriminatory fashion. Moreover, the existence of this practice sharply reduces the true scope of the substantive change effected by openly adopting comparative negligence. [¶] Thus, stability, predictability, and evenhandedness are better served by the change to comparative negligence than by adhering in theory to a law that contributory fault bars when this rule has ceased to be the law in practice." (21 Vand.L.Rev. at p. 916.)

A contrary conclusion is drawn in an article by Lewis F. Powell, Jr., now an Associate Justice of the United States Supreme Court. Because a loose form of comparative negligence is already applied in practice by independent American juries, Justice Powell argues, the "all-or-nothing" rule of contributory negligence ought to be retained as a check on the jury's tendency to favor the plaintiff. (Powell, *Contributory Negligence: A Necessary Check on the American Jury* (1957) 43 A.B.A.J. 1005.)

[6]Arkansas, Colorado, Connecticut, Georgia, Hawaii, Idaho, Maine, Massachusetts, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Rhode Island, South Dakota, Texas, Utah, Vermont, Washington, Wisconsin, Wyoming. (Schwartz, Comparative Negligence (1974), Appendix A, pp. 367-369.)

In the federal sphere, comparative negligence of the "pure" type (see *infra*) has been the rule since 1908 in cases arising under the Federal Employers' Liability Act (see 45 U.S.C. § 53) and since 1920 in cases arising under the Jones Act (see 46 U.S.C. § 688) and the Death on the High Seas Act (see 46 U.S.C. § 766).

doctrine rendering contributory negligence a complete bar to recovery —and that it should be replaced in this state by a system under which liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault.[6a]

The foregoing conclusion, however, clearly takes us only part of the way. It is strenuously and ably urged by defendants and two of the amici curiae that whatever our views on the relative merits of contributory and comparative negligence, we are precluded from making those views the law of the state by judicial decision. Moreover, it is contended, even if we are not so precluded, there exist considerations of a practical nature which should dissuade us from embarking upon the course which we have indicated. We proceed to take up these two objections in order.

## II

It is urged that any change in the law of contributory negligence must be made by the Legislature, not by this court. Although the doctrine of contributory negligence is of judicial origin—its genesis being traditionally attributed to the opinion of Lord Ellenborough in *Butterfield* v. *Forrester* (K.B. 1809) 103 Eng. Rep. 926—the enactment of section 1714 of the Civil Code[7] in 1872 codified the doctrine as it stood at that date and, the argument continues, rendered it invulnerable to attack in the courts except on constitutional grounds. Subsequent cases of this court, it is pointed out, have unanimously affirmed that—barring the appearance of some constitutional infirmity—the "all-or-nothing" rule is the law of this state and shall remain so until the Legislature directs otherwise. The fundamental constitutional doctrine of separation of powers, the argument concludes, requires judicial abstention.

We are further urged to observe that a basic distinction exists between the situation obtaining in Florida prior to the decision of that state's Supreme Court abrogating the doctrine (*Hoffman* v. *Jones, supra,* 280 So.2d 431), and the situation now confronting this court. There, to be sure, the Florida court was also faced with a statute, and the dissenting justice considered that fact sufficient to bar judicial change of the rule. The statute there in question, however, merely declared that the general

---

[6a] In employing the generic term "fault" throughout this opinion we follow a usage common to the literature on the subject of comparative negligence. In all cases, however, we intend the term to import nothing more than "negligence" in the accepted legal sense.

[7] Section 1714 of the Civil Code has never been amended. It provides as follows: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, *except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.* The extent of liability in such cases is defined by the Title on Compensatory Relief." (Italics added.)

English common and statute law in effect on July 4, 1776, was to be in force in Florida except to the extent it was inconsistent with federal constitutional and statutory law and acts of the state legislature. (Fla. Stat., § 2.01, F.S.A.) The majority simply concluded that there was no clear-cut common law rule of contributory negligence prior to the 1809 *Butterfield* decision (*Butterfield* v. *Forrester, supra,* 103 Eng. Rep. 926), and that therefore that rule was not made a part of Florida law by the statute.[8] (280 So.2d at pp. 434-435.) In the instant case, defendants and the amici curiae who support them point out, the situation is quite different: here the Legislature has specifically enacted the rule of contributory negligence as the law of this state. In these circumstances, it is urged, the doctrine of separation of powers requires that any change must come from the Legislature.

We have concluded that the foregoing argument, in spite of its superficial appeal, is fundamentally misguided. ■ As we proceed to point out and elaborate below, it was not the intention of the Legislature in enacting section 1714 of the Civil Code, as well as other sections of that code declarative of the common law, to insulate the matters therein expressed from further judicial development; rather it was the intention of the Legislature to announce and formulate existing common law principles and definitions for purposes of orderly and concise presentation and with a distinct view toward continuing judicial evolution.

Before turning our attention to section 1714 itself we make some observations concerning the 1872 Civil Code as a whole. Professor Arvo Van Alstyne, in an excellent and instructive article entitled The California Civil Code which appears as the introductory commentary to West's Annotated Civil Code (1954), has carefully and authoritatively traced the history and examined the development of this, the first code of substantive law to be adopted in this state. Based upon the ill-fated draft Civil Code prepared under the direction and through the effort of David Dudley Field for adoption in the state of New York, the California code found acceptance for reasons largely related to the temperament and needs of an emerging frontier society. "In the young and growing commonwealth of California, the basically practical views of Field commanded wider acceptance than the more theoretic and philosophic arguments of the jurists of the historic school. In 1872, the advantages of

---

[8]It should be observed that the Florida court held alternatively that even if contributory negligence *was* recognized by the common law prior to the day of American independence, and therefore was made a part of Florida law by the statute, it remained subject to judicial overruling because of its common law origin. (280 So.2d at pp. 435-436.)

codification of the unwritten law, as well as of a systematic revision of statute law, loomed large, since that law, drawing heavily upon the judicial traditions of the older states of the Union, was still in a formative stage. The possibility of widely dispersed popular knowledge of basic legal concepts comported well with the individualistic attitudes of the early West." (Van Alstyne, *supra,* p. 6.)

However, the extreme consciseness and brevity of expression which was characteristic of the 1872 code, although salutary from the point of view of popular access to basic legal concepts, early led to uncertainty and dispute as to whether it should be regarded as the exclusive or primary source of the law of private rights. Due largely to the influence of a series of articles on the subject by Professor John Norton Pomeroy, this problem of interpretation was soon resolved, and by 1920 this court was able to state with confidence: "The Civil Code was not designed to embody the whole law of private and civil relations, rights, and duties; it is incomplete and partial; and except in those instances where its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning a particular subject matter, a section of the code purporting to embody such doctrine or rule will be construed in light of common-law decisions on the same subject." (*Estate of Elizalde* (1920) 182 Cal. 427, 433 [188 P. 560]; see also Van Alstyne, *supra,* pp. 29-35.)

In addition, the code itself provides explicit guidance as to how such construction shall proceed. "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. The Code establishes the law of this State respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice." (Civ. Code (1872) § 4.) Also, "[t]he provisions of this Code, so far as they are substantially the same as existing statutes or the common law, must be construed as *continuations* thereof, and not as new enactments." (Civ. Code 1872) § 5; italics added.) The effect of these sections was early expressed by us in *In re Jessup* (1889) 81 Cal. 408, 419 [21 P. 976, 22 P. 742, 1028], in the following terms: "[E]ven as to the code, 'liberal construction' does not mean enlargement or restriction of a plain provision of a written law. If a provision of the code is plain and unambiguous, it is the duty of the court to enforce it as it is written. If it is ambiguous or doubtful, or susceptible of different constructions or interpretations, then such liberality of construction is to be indulged in as, within the fair interpretation of its language, will effect its apparent object and promote justice." (See also

*Baxter* v. *Shanley-Furness Co.* (1924) 193 Cal. 558, 560 [226 P. 391]; see generally 45 Cal.Jur.2d, Statutes, § 162, pp. 663-667.)

The foregoing view of the character, function, and proper mode of interpretation of the Civil Code has imbued it with admirable flexibility from the standpoint of adaptation to changing circumstances and conditions. As Professor Van Alstyne states the matter: "[The code's] incompleteness, both in scope and in detail[,] have provided ample room for judicial development of important new systems of rules, frequently built upon Code foundations. In the field of torts, in particular, which the Civil Code touches upon only briefly and sporadically, the courts have been free from Code restraint in evolving the details of such currently vital rules as those pertaining to last clear chance, the right of privacy, *res ipsa loquitur,* unfair competition, and the 'impact rule' in personal injury cases . . . . [¶] In short, the Civil Code has not, as its critics had predicted, restricted the orderly development of the law in its most rapidly changing areas along traditional patterns. That this is true is undoubtedly due in large measure to the generality of Code treatment of its subject matter, stress being placed upon basic principles rather than a large array of narrowly drawn rules. In addition, the acceptance of Professor Pomeroy's concept of the Civil Code as a continuation of the common law created an atmosphere in which Code interpretation could more easily partake of common law elasticity." (Van Alstyne, *supra,* pp. 36-37.)

It is with these general precepts in mind that we turn to a specific consideration of section 1714. That section, which we have already quoted in full (fn. 7, *ante*), provides in relevant part as follows: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, *except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself.*" (Italics added.)

The present-day reader of the foregoing language is immediately struck by the fact that it seems to provide in specific terms for a rule of *comparative* rather than *contributory* negligence—i.e., for a rule whereby plaintiff's recovery is to be diminished *to the extent* that his own actions have been responsible for his injuries. The use of the compound conjunction "except so far as"—rather than some other conjunction setting up a wholly disqualifying condition—clearly seems to indicate an intention on the part of the Legislature to adopt a system other than one wherein contributory fault on the part of the plaintiff would operate to

*bar* recovery.[9] Thus it could be argued—as indeed it has been argued with great vigor by plaintiff and the amici curiae who support her position—that no *change* in the law is necessary in this case at all. Rather, it is asserted, all that is here required is a recognition by this court that section 1714 announced a rule of comparative negligence in this state in 1872 and a determination to brush aside all of the misguided decisions which have concluded otherwise up to the present day. (See also Bodwell, *It's Been Comparative Negligence For Seventy-Nine Years* (1952) 27 L.A. Bar Bull. 247.)

■ ■■■ Our consideration of this arresting contention—and indeed of the whole question of the true meaning and intent of section 1714—cannot proceed without reference to the Code Commissioners' Note which appeared immediately following section 1714 in the 1872 code.[10] That note provided in full as follows: "Code La., § 2295; Code Napoleon, § 1383; Austin vs. Hudson River R.R. Co., 25 N.Y., p. 334; Jones vs. Bird, 5 B. & Ald., p. 837; Dodd vs. Holmes, 1 Ad. & El., p. 493. *This section modifies the law heretofore existing.*—See 20 N.Y., p. 67; 10 M. & W., p. 546; 5 C. B. (N. S.), p. 573. This class of obligations imposed by law seems to be laid down in the case of Baxter vs. Roberts, July Term, 1872, Sup. Ct. Cal. Roberts employed Baxter to perform a service which he (Roberts) knew to be perilous, without giving Baxter any notice of its perilous character; Baxter was injured. Held: that Roberts was responsible in damages for the injury which Baxter sustained. (See facts of case.)" (1 Annot. Civ. Code (Haymond & Burch 1874 ed.) p. 519; italics added.)

Each of the parties and amici in this case has applied himself to the task of legal cryptography which the interpretation of this note involves. The variety of answers which has resulted is not surprising. We first address ourselves to the interpretation advanced by plaintiff and the amici curiae in support of her contention set forth above, that section 1714 in fact announced a rule of comparative rather than contributory negligence.

---

[9] This impression is strengthened by a comparison of the language of section 1714 with the section of the Field draft on which it was modeled. Section 853 of the 1865 draft of the New York Civil Code, whose manifest intention was to state the strict rule of contributory negligence, uses the word "unless" in the position wherein its successor section 1714 substitutes "except so far as." (See fn. 12, *infra.*) As we shall explain, however, wisdom does not lie in drawing hasty conclusions from this change in language.

[10] In determining whether a specific code section was intended to depart from or merely restate the common law, weight is to be accorded the notes and comments of the Code Commissioners. (See *O'Hara* v. *Wattson* (1916) 172 Cal. 525, 534-535 [157 P. 608].)

The portion of the note which is relevant to our inquiry extends from its beginning up to the series of three cases cited following the italicized sentence: *"This section modifies the law heretofore existing."* Plaintiff and her allies point out that the first authorities cited are two statutes from civil law jurisdictions, Louisiana and France; then comes the italicized sentence; finally there are cited three cases which state the common law of contributory negligence modified by the doctrine of last clear chance. The proper interpretation, they urge, is this: Civil law jurisdictions, they assert, uniformly apportion damages according to fault. The citation to statutes of such jurisdictions, followed by a sentence indicating that a change is intended, followed in turn by the citation of cases expressing the common law doctrine—these taken together, it is urged, support the clear language of section 1714 by indicating the rejection of the common law "all-or-nothing" rule and the adoption in its place of civil law principles of apportionment.

This argument fails to withstand close scrutiny. The civil law statutes cited in the note, like the common law cases cited immediately following them, deal not with "defenses" to negligence but with the basic concept of negligence itself.[11] In fact the Code Commissioners' Note to the parallel section of the Field draft cites the very same statutes and the very same cases in direct support of its statement of the basic rule.[12] Moreover, in 1872, when section 1714 was enacted and the Code Commissioners' Note was written, neither France nor Louisiana applied concepts of comparative negligence. The notion of *"faute commune"* did not become firmly rooted in French law until 1879 and was not codified until 1915. (See Turk, *Comparative Negligence on the March* (1950) 28 Chi.-Kent L.Rev. 189, 239-240.) Louisiana, in spite of an 1825 statute

---

[11]Section 1383 of the Code Napoleon (1804) provided: *"Chacun est responsable du dommage qu'il a causé non seulement par son fait, mais encore par sa négligence ou par son imprudence."* [Every person is responsible for the damage that he has caused not only by his act, but also by his negligence or by his imprudence.]

In 1872, article 2295 of the Louisiana Civil Code (now art. 2316) provided: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

[12]Section 853 of the 1865 Field draft of the New York Civil Code, along with its Code Commissioners' Note, provided: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person;¹ unless the latter has, willfully, or by want or ordinary care, incurred the risk of such injury.² The extent of liability in such cases is defined by the Title on COMPENSATORY RELIEF.

"1. *Code La.*, 2295; *Code Napoleon*, 1383; Austin v. Hudson River R. R. Co., 25 N.Y., 334; Jones v. Bird, 5 *B. & Ald.*, 837; Dodd v. Holmes, 1 *Ad. & El.*, 493.

"2. Johnson v. Hudson River R. R. Co., 20 N.Y., 69."

which appeared to establish comparative negligence,[13] firmly adhered to the "all-or-nothing" common law rule in 1872 and has done so ever since. (See Schwartz, *supra*, § 1.3, p. 10, fn. 76; Turk, *supra*, at pp. 318-326.) In fact, in 1872 there was no American jurisdiction applying concepts of true comparative negligence for general purposes,[14] and the only European jurisdictions doing so were Austria and Portugal. (Turk, *supra*, at p. 241.) Among those jurisdictions applying such concepts in the limited area in which they have traditionally been applied, to wit, admiralty, was California itself: in section 973 of the very Civil Code which we are now considering (now Harb. & Nav. Code, § 292) apportionment was provided for when the negligence of the plaintiff was slight. Yet the Code Commissioners' Note did not advert to this section.

In view of all of the foregoing we think that it would indeed be surprising if the 1872 Legislature, intending to accomplish the marked departure from common law which the adoption of comparative negligence would represent, should have chosen to do so in language which differed only slightly from that used in the Field draft to describe the common law rule. (See fn. 12, *ante;* see also *Buckley* v. *Chadwick, supra*, 45 Cal.2d 183, 192-193.) It would be even more surprising if the Code Commissioners, in stating the substance of the intended change, should fail to mention the law of any jurisdiction, American or foreign, which then espoused the new doctrine in any form, and should choose to cite in their note the very statutes and decisions which the New York Code Commissioners had cited in support of their statement of the common law rule. (See fn. 12, *ante,* and accompanying text.) ▆ ▆ ▆▆ It is in our view manifest that neither the Legislature nor the Code Commissioners harbored any such intention—and that the use of the words "except so far as" in section 1714 manifests an intention *other* than that of declaring comparative negligence the law of California in 1872.[15]

---

[13]The statute here in question (La. Code (1825) art. 2303) was not that cited by the Code Commissioners. (See fn. 11, *ante*, and accompanying text.)

[14]In 1872 two American jurisdictions, Illinois and Kansas, applied concepts of slight versus gross negligence—which was not really comparative negligence but another form of "all-or-nothing" rule according to which a slightly negligent plaintiff could recover 100 percent of his damages against a grossly negligent defendant. One jurisdiction, Georgia, had a true comparative negligence statute, but it was limited in application to railroad accidents. (Turk, *supra*, at pp. 304-318, 326-333.)

[15]The statement in some cases to the effect that section 1714 states a civil law rather than a common law principle (see *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Fernandez* v. *Consolidated Fisheries, Inc.* (1950) 98 Cal.App.2d 91, 95-96 [219 P.2d 73]) is correct insofar as it indicates that the duty to refrain from injuring others through negligence has its roots in civil law concepts. (See Turk, *supra*, at p. 209.) It is incorrect, however, insofar as it might be read to indicate that defenses affecting recovery for breach of that basic duty are also rooted in

That intention, we have concluded, was simply to insure that the rule of contributory negligence, as applied in this state, would not be the harsh rule then applied in New York but would be mitigated by the doctrine of last clear chance. The New York rule, which did *not* incorporate the latter doctrine, had been given judicial expression several years before in the case of *Johnson* v. *The Hudson River Railroad Company* (1859) 20 N.Y. 65. It is apparent from the Code Commissioners' Note that this rule was considered too harsh for adoption in California, and that the Legislature therefore determined to adopt a provision which would not have the effect of barring a negligent plaintiff from recovery without regard to the quantity or quality of his negligence.[16]

Turning to the text of the note, we observe that, as indicated above (fn. 11, *ante,* and accompanying text), the first group of citations, both statutory and decisional, deal with defining the basic concept of negligence and announcing a rule of recovery therefor. Then appears the sentence "This section modifies the law heretofore existing," followed immediately by the citation of three cases. The first of these, as we have indicated, is *Johnson* v. *The Hudson River Railroad Company, supra,* 20 N.Y. 65; that case represented the strict New York rule of contributory negligence, derived directly from the 1809 *Butterfield* case, under which *any* negligence on the part of the plaintiff barred recovery; and it had been specifically cited for that proposition in the Field draft section 853. (See fn. 12, *ante.*) The second and third cases cited by the California commissioners were *Davies* v. *Mann* (1842) 10 M.&W. 546, and *Tuff* v. *Warman* (1858) 5 C.B. (N.S.) 573; these cases stated the emerging doctrine of last clear chance, which the English courts had begun to apply in order to ameliorate the harsh *Butterfield* rule. Interestingly, the last cited of these cases contains language which might well have been the source of the term "except so far as" which the California Legislature used to indicate its parting of the ways with the New York rule: "It appears to us that the proper question for the jury in this case, and indeed in all others of the like kind, is, whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself *so far contributed* to the

---

the civil law. As we have shown, the defense of contributory negligence and its mitigative corollary, the doctrine of last clear chance, as they are stated in the statute, are clearly of common law origin.

[16]"Although . . . the bulk of the Code was based upon the New York draft code, it nevertheless cannot be classified as a mere duplication thereof. On the contrary, the original California Civil Code bears the unmistakable imprint of a thoroughgoing critical reconsideration and evaluation of the New York provisions, and their recasting where necessary in the light of California statutory and decision law, with a view to the improvement of the whole structure." (Van Alstyne, *supra,* at p. 11.)

misfortune by his own negligence or want of ordinary and common care and caution, that, but for such negligence or want of ordinary care and caution on his part, the misfortune would not have happened." (*Tuff* v. *Warman, supra,* 5 C.B. (N.S.) 573, 585; italics added.)[17]

We think that the foregoing establishes conclusively that the intention of the Legislature in enacting section 1714 of the Civil Code was to state the basic rule of negligence together with the defense of contributory negligence modified by the emerging doctrine of last clear chance. It remains to determine whether by so doing the Legislature intended to restrict the courts from further development of these concepts according to evolving standards of duty, causation, and liability.

This question must be answered in the negative. As we have explained above, the peculiar nature of the 1872 Civil Code as an avowed *continuation* of the common law has rendered it particularly flexible and adaptable in its response to changing circumstances and conditions. To reiterate the words of Professor Van Alstyne, "[the code's] incompleteness, both in scope and detail[,] have provided ample room for judicial

---

[17]It is difficult to understand why the Code Commissioners did not incorporate in their note citations to California cases dealing with the plaintiff's duty of care and the doctrine of last clear chance. Perhaps it was felt that a citation of the seminal English cases was sufficient to recognize the emerging principles. In any event, it is worthy of note that this court, in the 1869 decision of *Needham* v. *S. F. & S. J. R. Co.* (1869) 37 Cal. 409, had carefully examined the New York rule and had firmly rejected it in favor of the more humane English view. Of more than passing interest in the present premises is the following language from our opinion: "To this doctrine [the strict New York rule], however, notwithstanding the very respectable authority by which it is sustained, we are unable to assent. About the general rule upon which it is founded—that a plaintiff cannot recover for the negligence of the defendant, if his own want of care or negligence has in any degree contributed to the result complained of—there can be no dispute. (*Gay* v. *Winter,* 34 Cal. 153.) The reason of this rule is, that both parties being at fault, there can be no apportionment of the damages, and not that the negligence of the plaintiff justifies or excuses the negligence of the defendant, which would seem to be the true reason in the estimation of the New York Courts. The law does not justify or excuse the negligence of the defendant. *It would, notwithstanding the negligence of the plaintiff, hold the defendant responsible, if it could. It merely allows him to escape judgment because, from the nature of the case, it is unable to ascertain what share of the damages is due to his negligence. He is both legally and morally to blame, but there is no standard by which the law can measure the consequences of his fault, and therefore, and therefore only, he is allowed to go free of judgment. The impossibility of ascertaining in what degree his negligence contributed to the injury being then the sole ground of his exemption from liability, it follows that such exemption cannot be allowed where such impossibility does not exist; or, in other words, the general rule that a plaintiff who is himself at fault cannot recover, is limited by the reason upon which it is founded.*" (37 Cal. 409, 419; italics added.) This language clearly contains the germ of a comparative approach, if not the outright statement that such an approach would be adopted if apportionment of damages were technically possible.

development of important new systems of rules, frequently built upon Code foundations." (Van Alstyne, *supra,* at p. 36.) Section 1714 in particular has shown great adaptability in this respect. For example, the statute by its express language speaks of causation only in terms of actual cause or cause in fact ("Everyone is responsible . . . for an injury occasioned to another by his want of ordinary care."), but this has not prevented active judicial development of the twin concepts of proximate causation and duty of care. (See, e.g., *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 158-167 [95 Cal.Rptr. 623, 486 P.2d 151]; *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 865-868 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739-748 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Stewart* v. *Cox* (1961) 55 Cal.2d 857, 861-863 [13 Cal.Rptr. 521, 362 P.2d 345]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358]; *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63-66 [271 P.2d 23].) Conversely, the presence of this statutory language has not hindered the development of rules which, in certain limited circumstances, permit a finding of liability *in the absence* of direct evidence establishing the defendant's negligence as the actual cause of damage. (See *Summers* v. *Tice* (1948) 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91]; *Ybarra* v. *Spangard* (1944) 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258].) By the same token we do not believe that the general language of section 1714 dealing with defensive considerations should be construed so as to stifle the orderly evolution of such considerations in light of emerging techniques and concepts. ■ On the contrary we conclude that the rule of liberal construction made applicable to the code by its own terms (Civ. Code, § 4, discussed *ante*) together with the code's peculiar character as a continuation of the common law (see Civ. Code, § 5, also discussed *ante*) permit if not require that section 1714 be interpreted so as to give dynamic expression to the fundamental precepts which it summarizes.

The aforementioned precepts are basically two. The first is that one whose negligence has caused damage to another should be liable therefor. The second is that one whose negligence has contributed to his own injury should not be permitted to cast the burden of liability upon another. The problem facing the Legislature in 1872 was how to accommodate these twin precepts in a manner consonant with the then progress of the common law and yet allow for the incorporation of future developments. The manner chosen sought to insure that the harsh accommodation wrought by the New York rule—i.e., *barring* recovery to one guilty of *any* negligence—would not take root in this state. Rather the Legislature wished to encourage a more humane rule—one holding out the hope of recovery to the negligent plaintiff in some circumstances.

The resources of the common law at that time (in 1872) did not include techniques for the apportionment of damages strictly according to fault—a fact which this court had lamented three years earlier (see fn. 17, *ante*). They did, however, include the nascent doctrine of last clear chance which, while it too was burdened by an "all-or-nothing" approach, at least to some extent avoided the often unconscionable results which could and did occur under the old rule precluding recovery when *any* negligence on the part of the plaintiff contributed in *any* degree to the harm suffered by him. Accordingly the Legislature sought to include the concept of last clear chance in its formulation of a rule of responsibility. We are convinced, however, as we have indicated, that in so doing the Legislature in no way intended to thwart future judicial progress toward the humane goal which it had embraced. ■ Therefore, and for all of the foregoing reasons, we hold that section 1714 of the Civil Code was not intended to and does not preclude present judicial action in furtherance of the purposes underlying it.

### III

We are thus brought to the second group of arguments which have been advanced by defendants and the amici curiae supporting their position. Generally speaking, such arguments expose considerations of a practical nature which, it is urged, counsel against the adoption of a rule of comparative negligence in this state even if such adoption is possible by judicial means.

The most serious of these considerations are those attendant upon the administration of a rule of comparative negligence in cases involving multiple parties. One such problem may arise when all responsible parties are not brought before the court: it may be difficult for the jury to evaluate relative negligence in such circumstances, and to compound this difficulty such an evaluation would not be res judicata in a subsequent suit against the absent wrongdoer. Problems of contribution and indemnity among joint tortfeasors lurk in the background. (See generally Prosser, *Comparative Negligence, supra,* 41 Cal.L.Rev. 1, 33-37; Schwartz, Comparative Negligence, *supra,* §§ 16.1-16.9, pp. 247-274.)

A second and related major area of concern involves the administration of the actual process of fact-finding in a comparative negligence system. The assigning of a specific percentage factor to the amount of negligence attributable to a particular party, while in theory a matter of little difficulty, can become a matter of perplexity in the face of hard facts.

The temptation for the jury to resort to a quotient verdict in such circumstances can be great. (See Schwartz, *supra*, § 17.1, pp. 275-279.) These inherent difficulties are not, however, insurmountable. Guidelines might be provided the jury which will assist it in keeping focussed upon the true inquiry (see, e.g., Schwartz, *supra*, § 17.1, pp. 278-279), and the utilization of special verdicts[18] or jury interrogatories can be of invaluable assistance in assuring that the jury has approached its sensitive and often complex task with proper standards and appropriate reverence. (See Schwartz, *supra*, § 17.4, pp. 282-291; Prosser, *Comparative Negligence, supra,* 41 Cal.L.Rev., pp. 28-33.)

The third area of concern, the status of the doctrines of last clear chance and assumption of risk, involves less the practical problems of administering a particular form of comparative negligence than it does a definition of the theoretical outline of the specific form to be adopted. Although several states which apply comparative negligence concepts retain the last clear chance doctrine (see Schwartz, *supra*, § 7.2, p. 134), the better reasoned position seems to be that when true comparative negligence is adopted, the need for last clear chance as a palliative of the hardships of the "all-or-nothing" rule disappears and its retention results only in a windfall to the plaintiff in direct contravention of the principle of liability in proportion to fault. (See Schwartz, *supra*, § 7.2, pp. 137-139; Prosser, *Comparative Negligence, supra,* 41 Cal.L.Rev., p. 27.) As for assumption of risk, we have recognized in this state that this defense overlaps that of contributory negligence to some extent and in fact is made up of at least two distinct defenses. "To simplify greatly, it has been observed . . . that in one kind of situation, to wit, where a plaintiff *unreasonably* undertakes to encounter a specific known risk imposed by a defendant's negligence, plaintiff's conduct, although he may encounter that risk in a prudent manner, is in reality a form of contributory negligence . . . . Other kinds of situations within the doctrine of assumption of risk are those, for example, where plaintiff is held to agree to relieve defendant of an obligation of reasonable conduct toward him.

[18]It has been argued by one of the amici curiae that the mandatory use of special verdicts in negligence cases would require amendment of section 625 of the Code of Civil Procedure, which reposes the matter of special findings within the sound discretion of the trial court. (See *Cembrook* v. *Sterling Drug Inc.* (1964) 231 Cal.App.2d 52, 62-65 [41 Cal.Rptr. 492].) This, however, poses no problem at this time. For the present we impose no mandatory requirement that special verdicts be used but leave the entire matter of jury supervision within the sound discretion of the trial courts.

Such a situation would not involve contributory negligence, but rather a reduction of defendant's duty of care." (*Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245-246 [53 Cal.Rptr. 545, 418 P.2d 153]; see also *Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 368-369 [104 Cal.Rptr. 566]; see generally, 4 Witkin, Summary of Cal. Law, Torts, § 723, pp. 3013-3014; 2 Harper & James, The Law of Torts, *supra,* § 21.1, pp. 1162-1168; cf. Prosser, Torts, *supra,* § 68, pp. 439-441.) We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence. (See generally, Schwartz, *supra,* ch. 9, pp. 153-175.)

Finally there is the problem of the treatment of willful misconduct under a system of comparative negligence. In jurisdictions following the "all-or-nothing" rule, contributory negligence is no defense to an action based upon a claim of willful misconduct (see Rest. 2d Torts, § 503; Prosser, Torts, *supra,* § 65, p. 426), and this is the present rule in California. (*Williams* v. *Carr* (1968) 68 Cal.2d 579, 583 [68 Cal.Rptr. 305, 440 P.2d 505].)[19] As Dean Prosser has observed, "[this] is in reality a rule of comparative fault which is being applied, and the court is refusing to set up the lesser fault against the greater." (Prosser, Torts, *supra,* § 65, p. 426.) The thought is that the difference between willful and wanton misconduct and ordinary negligence is one of kind rather than degree in that the former involves conduct of an entirely different order,[20] and under this conception it might well be urged that comparative negligence concepts should have no application when one of the parties has been guilty of willful and wanton misconduct. It has been persuasively argued, however, that the loss of deterrent effect that would occur upon

---

[19] BAJI No. 3.52 (1971 re-revision) currently provides: "Contributory negligence of a plaintiff is not a bar to his recovery for an injury caused by the wilful or wanton misconduct of a defendant. [¶] Wilful or wanton misconduct is intentional wrongful conduct, done either with knowledge, express or implied, that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results. An intent to injure is not a necessary element of wilful or wanton misconduct. [¶] To prove such misconduct it is not necessary to establish that defendant himself recognized his conduct as dangerous. It is sufficient if it be established that a reasonable man under the same or similar circumstances would be aware of the dangerous character of such conduct."

[20] "Disallowing the contributory negligence defense in this context is different from last clear chance; the defense is denied not because defendant had the last opportunity to avoid the accident but rather because defendant's conduct was so culpable it was different in 'kind' from the plaintiff's. The basis is culpability rather than causation." (Schwartz, *supra,* § 5.1, p. 100; fn. omitted.)

application of comparative fault concepts to willful and wanton misconduct as well as ordinary negligence would be slight, and that a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional. (Schwartz, *supra*, § 5.3, p. 108.) The law of punitive damages remains a separate consideration. (See Schwartz, *supra*, § 5.4, pp. 109-111.)

The existence of the foregoing areas of difficulty and uncertainty (as well as others which we have not here mentioned—see generally Schwartz, *supra*, § 21.1, pp. 335-339) has not diminished our conviction that the time for a revision of the means for dealing with contributory fault in this state is long past due and that it lies within the province of this court to initiate the needed change by our decision in this case. Two of the indicated areas (i.e., multiple parties and willful misconduct) are not involved in the case before us, and we consider it neither necessary nor wise to address ourselves to specific problems of this nature which might be expected to arise. As the Florida court stated with respect to the same subject, "it is not the proper function of this Court to decide unripe issues, without the benefit of adequate briefing, not involving an actual controversy, and unrelated to a specific factual situation." (*Hoffman* v. *Jones, supra,* 280 So.2d 431, 439.)

Our previous comments relating to the remaining two areas of concern (i.e., the status of the doctrines of last clear chance and assumption of risk, and the matter of judicial supervision of the finder of fact) have provided sufficient guidance to enable the trial courts of this state to meet and resolve particular problems in this area as they arise. As we have indicated, last clear chance and assumption of risk (insofar as the latter doctrine is but a variant of contributory negligence) are to be subsumed under the general process of assessing liability in proportion to fault, and the matter of jury supervision we leave for the moment within the broad discretion of the trial courts.

Our decision in this case is to be viewed as a first step in what we deem to be a proper and just direction, not as a compendium containing the answers to all questions that may be expected to arise. Pending future judicial or legislative developments, we are content for the present to assume the position taken by the Florida court in this matter: "We feel the trial judges of this State are capable of applying [a] comparative negligence rule without our setting guidelines in anticipation of expected problems. The problems are more appropriately resolved at the trial

level in a practical manner instead of a theoretical solution at the appellate level. The trial judges are granted broad discretion in adopting such procedures as may accomplish the objectives and purposes expressed in this opinion." (280 So.2d at pp. 439-440.)

It remains to identify the precise form of comparative negligence which we now adopt for application in this state. Although there are many variants, only the two basic forms need be considered here. The first of these, the so-called "pure" form of comparative negligence, apportions liability in direct proportion to fault in all cases. This was the form adopted by the Supreme Court of Florida in *Hoffman* v. *Jones, supra,* and it applies by statute in Mississippi, Rhode Island, and Washington. Moreover it is the form favored by most scholars and commentators. (See, e.g., Prosser, *Comparative Negligence, supra,* 41 Cal.L.Rev. 1, 21-25; Prosser, Torts, *supra,* § 67, pp. 437-438; Schwartz, *supra,* § 21.3, pp. 341-348; *Comments on Maki v. Frelk—Comparative v. Contributory Negligence: Should the Court or Legislature Decide?, supra,* 21 Vand.L.Rev. 889 (Comment by Keeton at p. 906, Comment by Leflar at p. 918).) The second basic form of comparative negligence, of which there are several variants, applies apportionment based on fault *up to the point* at which the plaintiff's negligence is equal to or greater than that of the defendant—when that point is reached, plaintiff is barred from recovery. Nineteen states have adopted this form or one of its variants by statute. The principal argument advanced in its favor is moral in nature: that it is not morally right to permit one more at fault in an accident to recover from one less at fault. Other arguments assert the probability of increased insurance, administrative, and judicial costs if a "pure" rather than a "50 percent" system is adopted, but this has been seriously questioned. (See authorities cited in Schwartz, *supra,* § 21.3, pp. 344-346; see also *Vincent* v. *Pabst Brewing Co.* (1970) 47 Wis.2d 120, 138 [177 N.W.2d 513] (dissenting opn.).)

We have concluded that the "pure" form of comparative negligence is that which should be adopted in this state. In our view the "50 percent" system simply shifts the lottery aspect of the contributory negligence rule[21] to a different ground. As Dean Prosser has noted, under such a

---

[21]"The rule that contributory fault bars completely is a curious departure from the central principle of nineteenth century Anglo-American tort law—that wrongdoers should bear the losses they cause. Comparative negligence more faithfully serves that central principle by causing the wrongdoers to share the burden of resulting losses in reasonable relation to their wrongdoing, rather than allocating the heavier burden to the one who, as luck would have it, happened to be more seriously injured." (*Comments on Maki v. Frelk, supra,* 21 Vand.L.Rev. 889, Comment by Keeton, pp. 912-913.)

system "[i]t is obvious that a slight difference in the proportionate fault may permit a recovery; and there has been much justified criticism of a rule under which a plaintiff who is charged with 49 percent of the total negligence recovers 51 percent of his damages, while one who is charged with 50 percent recovers nothing at all."[22] (Prosser, *Comparative Negligence, supra,* 41 Cal.L.Rev. 1, 25; fns. omitted.) In effect "such a rule distorts the very principle it recognizes, i.e., that persons are responsible for their acts to the extent their fault contributes to an injurious result. The partial rule simply lowers, but does not eliminate, the bar of contributory negligence." (Juenger, *Brief for Negligence Law Section of the State Bar of Michigan in Support of Comparative Negligence as Amicus Curiae, Parsonson v. Construction Equipment Company, supra,* 18 Wayne L.Rev. 3, 50; see also Schwartz, *supra,* § 21.3, p. 347.)

We also consider significant the experience of the State of Wisconsin, which until recently was considered the leading exponent of the "50 percent" system. There that system led to numerous appeals on the narrow but crucial issue whether plaintiff's negligence was equal to defendant's. (See Prosser, *Comparative Negligence, supra,* 41 Cal.L.Rev. 1, 23-25.) Numerous reversals have resulted on this point, leading to the development of arcane classifications of negligence according to quality and category. (See cases cited in *Vincent v. Pabst Brewing Co., supra,* 47 Wis.2d 120, at p. 137 (dissenting opn. ).) This finally led to a frontal attack on the system in the *Vincent* case, cited above, wherein the state supreme court was urged to replace the statutory "50 percent" rule by a judicially declared "pure" comparative negligence rule. The majority of the court rejected this invitation, concluding that the Legislature had occupied the field, but three concurring justices and one dissenter indicated their willingness to accept it if the Legislature failed to act with reasonable dispatch. The dissenting opinion of Chief Justice Hallows, which has been cited above, stands as a persuasive testimonial in favor of the "pure" system. We wholeheartedly embrace its reasoning. (See also, *Hoffman v. Jones, supra,* 280 So.2d 431, 438-439.)

■ For all of the foregoing reasons we conclude that the "all-or-nothing" rule of contributory negligence as it presently exists in this

---

[22]This problem is compounded when the injurious result is produced by the combined negligence of several parties. For example in a three-car collision a plaintiff whose negligence amounts to one-third or more recovers nothing; in a four-car collision the plaintiff is barred if his negligence is only one-quarter of the total. (See Juenger, *Brief for Negligence Law Section of the State Bar of Michigan in Support of Comparative Negligence as Amicus Curiae, Parsonson v. Construction Equipment Company* (1972) 18 Wayne L.Rev. 3, 50-51.)

state should be and is herewith superseded by a system of "pure" comparative negligence, the fundamental purpose of which shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties. Therefore, in all actions for negligence resulting in injury to person or property, the contributory negligence of the person injured in person or property shall not bar recovery, but the damages awarded shall be diminished in proportion to the amount of negligence attributable to the person recovering. ██ The doctrine of last clear chance is abolished, and the defense of assumption of risk is also abolished to the extent that it is merely a variant of the former doctrine of contributory negligence; both of these are to be subsumed under the general process of assessing liability in proportion to negligence. Pending future judicial or legislative developments, the trial courts of this state are to use broad discretion in seeking to assure that the principle stated is applied in the interest of justice and in furtherance of the purposes and objectives set forth in this opinion.

It remains for us to determine the extent to which the rule here announced shall have application to cases other than those which are commenced in the future. ██ It is the rule in this state that determinations of this nature turn upon considerations of fairness and public policy. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 800 [87 Cal.Rptr. 839, 471 P.2d 487]; *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 868 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]; *Forster Shipbldg. Co.* v. *County of L. A.* (1960) 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736]; *County of Los Angeles* v. *Faus* (1957) 48 Cal.2d 672, 680-681 [312 P.2d 680].) Upon mature reflection, in view of the very substantial number of cases involving the matter here at issue which are now pending in the trial and appellate courts of this state, and with particular attention to considerations of reliance applicable to individual cases according to the stage of litigation which they have reached, we have concluded that a rule of limited retroactivity should obtain here. Accordingly we hold that the present opinion shall be applicable to all cases in which trial has not begun before the date this decision becomes final in this court, but that it shall not be applicable to any case in which trial began before that date (other than the instant case)—except that if any judgment be reversed on appeal for other reasons, this opinion shall be applicable to any retrial.

As suggested above, we have concluded that this is a case in which the litigant before the court should be given the benefit of the new rule

announced. Here, unlike in *Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765, considerations of fairness and public policy do not dictate that a purely prospective operation be given to our decision.[23] To the contrary, sound principles of decision-making compel us to conclude that, in the light of the particular circumstances of the instant case,[24] the new rule here announced should be applied additionally to the case at bench so as to provide incentive in future cases for parties who may have occasion to raise "issues involving renovation of unsound or outmoded legal doctrines." (See Mishkin, *Foreword, The Supreme Court 1964 Term* (1965) 79 Harv.L.Rev. 56, 60-62.) We fully appreciate that there may be other litigants now in various stages of trial or appellate process who have also raised the issue here before us but who will nevertheless be foreclosed from benefitting from the new standard by the rule of limited retroactivity we have announced in the preceding paragraph. This consideration, however, does not lead us to alter that rule. "Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 301 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; fn. omitted.)

In view of the foregoing disposition of this case we have not found it necessary to discuss plaintiff's additional contention that the rule of contributory negligence is in violation of state and federal constitutional provisions guaranteeing equal protection of the laws.

The judgment is reversed.

Wright, C. J., Tobriner, J., and Burke, J.,* concurred.

**MOSK, J.**—Although I concur in the judgment and agree with the substance of the majority opinion, I dissent from its cavalier treatment of the recurring problem of the manner of applying a new court-made rule.

[23]Indeed, as we have indicated in the preceding paragraph, such considerations have led us to permit application of the new rule to actions which have been commenced but have not yet been brought to trial.

[24]Nothing we say here today on this point is intended to overrule, in whole or in part, expressly or by implication, the case of *Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765, or any other case involving the prospective or retrospective operation of our decisions.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

In footnote 24 the opinion denies that the court now "is intending to overrule" the case of *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765 [87 Cal.Rptr. 839, 471 P.2d 487]. Whether or not the majority subjectively *intend* to overrule *Westbrook,* the result and the text of the opinion indicate beyond any doubt that *they have actually done so.* Precedent is established not merely by what a court says; it is created primarily by what a court does. (*Norris* v. *Moody* (1890) 84 Cal. 143, 149 [24 P. 37]; *Childers* v. *Childers* (1946) 74 Cal.App.2d 56, 61 [168 P.2d 218].)

Unfortunately the forthrightness of the majority opinion as a whole is sadly diminished by a curious reluctance to face up to reality by recognizing that this court is finally overruling *Westbrook* and several other cases on the subject of applying a new court-made rule to the parties at hand.

As recently as *People* v. *Hitch* (1974) 12 Cal.3d 641, 654 [117 Cal.Rptr. 9, 527 P.2d 361], the majority of this court, while upholding the appellant's contentions, denied him relief on a theory that prospectivity should prevail over retroactive application of a new rule. I pointed out in my dissent (*id.* at p. 655) that "there is a third, and preferable, alternative: applying *the new rule to the aggrieved party responsible for bringing the issue to judicial attention, and thereafter prospectively."*

Up to now the majority never deigned to consider the third alternative, but persisted in their erroneous notion that the only choice was between total retroactivity and absolute prospectivity. This occurred in two other cases last year: see my concurring opinion in *In re Stewart* (1974) 10 Cal.3d 902, 907 [112 Cal.Rptr. 520, 519 P.2d 568], and my dissenting opinion in *In re Yurko* (1974) 10 Cal.3d 857, 867 [112 Cal.Rptr. 513, 519 P.2d 561].

In retrospect it is clear that *Westbrook* v. *Mihaly, supra,* was the point of departure in which the majority first strayed from the accepted doctrine that a prevailing party is to be awarded the fruits of his victory. In my concurring and dissenting opinion in that case (2 Cal.3d at p. 802) and in *Hitch* (12 Cal.3d at p. 656) I quoted from *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], to the effect that the benefits of a new rule should apply to the parties to the proceeding which results in the new rule. In the instant case, the majority now quote that same portion of *Stovall,* this time with approval (*ante,* p. 830).

Also, in *Westbrook* v. *Mihaly* (2 Cal.3d at p. 804) I noted that if a new rule is to apply prospectively only, "it will tend to deter counsel from

presenting 'issues involving renovation of unsound or outmoded legal doctrines,' " citing Mishkin's foreword to the article on the 1964 term of the Supreme Court in 79 Harvard Law Review 56. The majority now adopt the same point based upon the same quotation (*ante*, p. 830).

The majority paint their conclusion herein with such broad-brush and standardless terms as "considerations of fairness and public policy" and "sound principles of decision-making," without giving any clue why application of a new rule is fair to Nga Li, but somehow was unfair as applied over the past several years to Westbrook·and to the several other litigants who helped us develop new rules of law only to be deprived of the benefits thereof. The most inexplicable previous result was *Larez* v. *Shannon* (1970) 2 Cal.3d 813 [87 Cal.Rptr. 871, 471 P.2d 519], in which, it will be remembered, the plaintiffs prevailed completely on principle, but the majority went so far as to reverse a judgment in their favor.

Nevertheless it is comforting that the majority of the court have finally settled on the third of the three available alternatives in applying a new court-made rule. Despite the majority's gratuitous disclaimer, the bench and bar will understand that this court is now overruling, insofar as they are inconsistent, the following opinions: *Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765; *Alhambra City Sch. Dist.* v. *Mize* (1970) 2 Cal.3d 806 [87 Cal.Rptr. 867, 471 P.2d 515]; *Larez* v. *Shannon, supra,* 2 Cal.3d 813, *Foytik* v. *Aronson* (1970) 2 Cal.3d 818 [87 Cal.Rptr. 873, 471 P.2d 521]; *In re Yurko, supra,* 10 Cal.3d 857; *People* v. *Hitch, supra,* 12 Cal.3d 641.

**CLARK, J.**—I dissent.

For over à century this court has consistently and unanimously held that Civil Code section 1714 codifies the defense of contributory negligence. Suddenly—after 103 years—the court declares section 1714 shall provide for comparative negligence instead. In my view, this action constitutes a gross departure from established judicial rules and role.

First, the majority's decision deviates from settled rules of statutory construction. A cardinal rule of construction is to effect the intent of the Legislature.[1] The majority concedes "the intention of the Legislature in

---

[1] *Tyrone* v. *Kelley* (1973) 9 Cal.3d 1, 10-11 [106 Cal.Rptr. 761, 507 P.2d 65]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 256 [104 Cal.Rptr. 761, 502 P.2d 1049]; *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 686 [91 Cal.Rptr. 585, 478 P.2d 17]; *Scala* v. *Jerry Witt & Sons, Inc.* (1970) 3 Cal.3d 359, 366 [90 Cal.Rptr. 592, 475 P.2d 864]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [ 80 Cal.Rptr. 89, 458 P.2d 33].

enacting section 1714 of the Civil Code was to state the basic rule of negligence together with the defense of contributory negligence modified by the emerging doctrine of last clear chance." (*Ante,* p. 821.) Yet the majority refuses to honor this acknowledged intention—violating established principle.

The majority decision also departs significantly from the recognized limitation upon judicial action—encroaching on the powers constitutionally entrusted to the Legislature. The power to enact and amend our statutes is vested exclusively in the Legislature. (Cal. Const., art. III, § 3; art. IV, § 1.) "This court may not usurp the legislative function to change the statutory law which has been uniformly construed by a long line of judicial decisions." (*Estate of Calhoun* (1955) 44 Cal.2d 378, 387 [282 P.2d 880].) The majority's altering the meaning of section 1714, notwithstanding the original intent of the framers and the century-old judicial interpretation of the statute, represents no less than amendment by judicial fiat. Although the Legislature intended the courts to develop the working details of the defense of contributory negligence enacted in section 1714 (see generally, Commentary, Arvo Van Alstyne, The California Civil Code, 6 West Civ. Code (1954) pp. 1-43), no basis exists—either in history or in logic—to conclude the Legislature intended to authorize judicial repudiation of the basic defense itself at any point we might decide the doctrine no longer serves us.

I dispute the need for judicial—instead of legislative—action in this area. The majority is clearly correct in its observation that our society has changed significantly during the 103-year existence of section 1714. But this social change has been neither recent nor traumatic, and the criticisms leveled by the majority at the present operation of contributory negligence are not new. I cannot conclude our society's evolution has now rendered the normal legislative process inadequate.

Further, the Legislature is the branch best able to effect transition from contributory to comparative or some other doctrine of negligence. Numerous and differing negligence systems have been urged over the years, yet there remains widespread disagreement among both the commentators and the states as to which one is best. (See Schwartz, Comparative Negligence (1974) Appendix A, pp. 367-369 and § 21.3, fn. 40, pp. 341-342, and authorities cited therein.) This court is not an investigatory body, and we lack the means of fairly appraising the merits of these competing systems. Constrained by settled rules of judicial review, we must consider only matters within the record or susceptible to

judicial notice. That this court is inadequate to the task of carefully selecting the best replacement system is reflected in the majority's summary manner of eliminating from consideration *all but two* of the many competing proposals—including models adopted by some of our sister states.[2]

Contrary to the majority's assertions of judicial adequacy, the courts of other states—with near unanimity—have conceded their inability to determine the best system for replacing contributory negligence, concluding instead that the legislative branch is best able to resolve the issue.[3]

By abolishing this century old doctrine today, the majority seriously erodes our constitutional function. We are again guilty of judicial chauvinism.

McComb, J., concurred.

On April 24, 1975, the opinion was modified to read as printed above.

---

[2] "It remains to identify the precise form of comparative negligence which we now. adopt for application in this state. Although there are many variants, only the two basic forms need be considered here." (*Ante*, p. 827.)

[3] See, e.g., *Codling* v. *Paglia* (1973) 32 N.Y.2d 330, 344-345 [345 N.Y.S.2d 461, 298 N.E.2d 622]; *McGraw* v. *Corrin* (Del. 1973) 303 A.2d 641, 644; *Bridges* v. *Union Pacific Railroad Company* (1971) 26 Utah 2d 281 [488 P.2d 738]; *Parsonson* v. *Construction Equipment Company* (1971) 386 Mich. 61 [191 N.W.2d 465] (concurring opinion); *Krise* v. *Gillund* (N.Dak. 1971) 184 N.W.2d 405; *Peterson* v. *Culp* (1970) 255 Ore. 269 [465 P.2d 876]; *Vincent* v. *Pabst Brewing Co.* (1970) 47 Wis.2d 120 [177 N.W.2d 513]; *Maki* v. *Frelk* (1968) 40 Ill.2d 193 [239 N.E.2d 445, 32 A.L.R.3d 452]; compare *Hoffman* v. *Jones* (Fla. 1973) 280 So.2d 431.