No. CP-CV-100-84

# District Court of the Navajo Nation
# Judicial District of Crownpoint

---

Herman Cadman, *Plaintiff,*

vs.

Harry Hubbard, *et al., Defendants.*

Decided September 17, 1986

---

## OPINION

*Before Robert Yazzie, District Court Judge.*

*Robert Ericson, Esq. Fort Defiance, Arizona for the Plaintiff; Joseph Rich, Esq., Gallup, New Mexico for the Defendants.*

*Opinion delivered by Yazzie, District Court Judge.*

## I. Findings of Fact

1. This is a negligence action arising from an automobile collision. The accident occurred February 4, 1983, at 3.5 miles west of the turnoff to Standing Rock, New Mexico, on Navajo Route 9.

2. The weather conditions were cold and snowy. The road surface on Route 9 where the collision occurred, was icy. The road is a two-lane highway.

3. Between 4 and 5 p.m., on February 4th, the Plaintiff, Herman Cadman, was driving a 1980 pickup truck on Route 9, traveling west towards Twin Lakes, from Crownpoint, New Mexico.

4. On that same day the Defendant, Harry Hubbard, was also driving a vehicle owned by the Navajo Nation. He was traveling eastbound on Route 9, following a vehicle owned by the witness, Edison Harland.

5. Both the witnesses, Edison Harland, and Defendant Harry Hubbard, met the plaintiff's vehicle as they were travelling eastbound in the same direction on Route 9.

6. As the plaintiff's vehicle approached the defendant's and witness' vehicles, Defendant Hubbard tried to pass witness Harland's vehicle. In doing so, defendant entered into the plaintiff's lane of traffic where he encountered icy and unsafe road conditions.

226

7. At the same time, the Plaintiff, Herman Cadman was driving at fifty (50) miles per hour on the road surface.

8. When Plaintiff Cadman approached the point of collision, he saw the two vehicles approaching, and the defendant's vehicle attempting to pass Harland's vehicle.

9. Plaintiff Cadman immediately pumped his brakes. He skidded on the road surface into the first on-coming vehicle, Edison Harland's truck. A collision resulted.

10. The vehicle driven by Defendant Hubbard was not involved in the collision itself. Neither Defendant Hubbard nor the Navajo Nation suffered any damages.

11. As the result of the accident, the plaintiff sustained injuries to his spine and ankle. He can walk no more than three (3) blocks without severe discomfort. He suffers pain after any prolonged time of sitting. He cannot lift heavy objects.

12. Both the plaintiff and Dr. Harry Bishara, a witness for the plaintiff, testified that Herman Cadman cannot return to work in his present condition.

## II. Conclusions of Law

### A. LIABILITY

Given the facts in this case, liability is clear. Both plaintiff and defendant have a duty of care to drive the road surface safely. This duty was breached by the defendant. "But for" Defendant Hubbard's attempt to pass, the plaintiff's vehicle would not have skidded or collided with the vehicle of Edison Harland. Defendent Hubbard was careless by creating a situation that caused the collision. This was a direct and proximate cause of plaintiff's injuries.

The Plaintiff, Herman Cadman, on the other hand, has the same duty of care as the defendant regarding the road conditions on the February 4th accident. Plaintiff Cadman's speed, at (50) miles per hour, on the icy road is not what a reasonable person would travel under such road conditions. He should have slowed down to accommodate the road conditions. Driving at (50) miles per hour was excessive under those road conditions.

### B. DAMAGES

As a result of the accident, Plaintiff, Herman Cadman suffered these damages:

### 1. Pain and suffering

The plaintiff suffered pain for 1,106 days; from the time he was released from Indian Health Service Hospital in Gallup, New Mexico, to the date of trial, April 2, 1986. Plaintiff will be fairly compensated for pain and suffering at $10.00 per day. This adds to $11,060.00 for 1,106 days at $10.00 per day. There is no evidence offered on future pain and suffering.

### 2. Emotional Distress

Plaintiff testified that he can no longer engage in a number of activities, both recreational and familial. As a result of the accident, he cannot run anymore. He is not able to lift heavy objects nor do any manual labor. He cannot play baseball or basketball like he did before his injury. This causes his extreme emotional distress. The reasonable value for such lost capabilities is $8,000.00.

### 3. Loss of Income

The plaintiff was employed shortly before the accident, earning $12,000.00 per year. The evidence shows that plaintiff will not obtain gainful employment for five (5) years from the date of the accident. The plaintiff will suffer $60,000.00 in lost earnings. There is no other evidence offered on future loss of income.

This Court finds that the plaintiff suffered total damages of $79,060.00. As stated above, both the plaintiff and defendant were negligent. Therefore, plaintiff's damages must be apportioned according to his relative fault in causing the accident. 7 N.T.C. §701(d).

## C. COMPARATIVE NEGLIGENCE

This Court will utilize the doctrine of comparative negligence to determine how damages will be apportioned. Reviewing the doctrine of comparative negligence, and using the briefs submitted on the issue, this Court will determine the degree of fault of each party and apportion damages accordingly.

Comparative negligence developed under anglo law to replace the old and harsh law of contributory negligence. The contributory negligence theory totally barred a plaintiff from any recovery, even if he or she was only slightly at fault. Most courts, including New Mexico and Arizona state courts, have rejected the contributory negligence theory, and have adopted the comparative negligence doctrine.

Comparative negligence allows the plaintiff to recover even if his or her negligence contributed to the accident. The finder of fact will determine both the plaintiff's and defendant's percentage of fault in causing the acci-

dent. Then the plaintiff's damages will be reduced by his or her degree of fault, but will not necessarily be eliminated.

Comparative negligence does not exist at Navajo common law. But the Navajo Tribal Council has adopted 7 N.T.C. §701(d), which provides:

Where the injury was inflicted as the result of accident, or where both the plaintiff and the defendant were at fault, the judgment shall compensate the injured party for a reasonable part of the loss he has suffered. *(See also Tribal Council Resolution CJA-1059 §1).*

Does 7 N.T.C §701(d) embrace a concept akin to comparative negligence? There is no Navajo case law that interprets 7 N.T.C. §701(d), but it is apparent from the language of 7 N.T.C. §701(d), that comparative negligence is the law of the Navajo Nation, rather than contributory negligence. 7 N.T.C. §701(d) is a comparative negligence statute, because it says that even where the plaintiff and defendant are both at fault in an accident, the injured party shall be compensated for the loss he suffered on a reasonable basis. The question still remains how this Court, under 7 N.T.C. §701(d), will decide to reasonably compensate the injured plaintiff at hand, taking into account his percentage of fault. 7 N.T.C §701(d) provides no guidance in assessing a damage award under the comparative fault doctrine. In the absence of Navajo interpretation, this Court may look to state court interpretations of comparative negligence. 7 N.T.C §204(c).

As explained by the parties' briefs, there are basically two forms of comparative fault in the state courts; the "pure" form and the "modified" form. *See* Goldberg, *Judicial Adoption of Comparative Fault in New Mexico: The Time is At Hand*, 10 N.M. L. Rev. 1, 10-12 (1980). The "pure" form of comparative fault simply compares the respective fault of the plaintiff and defendant. If the plaintiff shares some fault, his damages are adjusted to reflect the degree of his fault. The actual degree of the plaintiff's own fault would not, in and of itself, bar his recovery for damages. The degree of fault would rather, "reduce his recovery of total damages suffered in an amount equal to his degree of fault. . . ." *Scott v. Rizzo,* 96 N.M. 682, 634 P. 2d 1234 at 1241 (1981). For example, a fifty percent (50%) negligent plaintiff will recover (50%) of his damages, or a sixty percent (60%) negligent plaintiff, will recover forty percent (40%) of his damages. The only circumstances in which a careless plaintiff will not recover at all are:

Where his own negligence, or his carelessness coupled with the carelessness of others, whom are not defendants, constitutes the "sole legal cause" of his damages, *cf. Armstrong v. Industrial Etc. and Equip. Service,* 97 N.M. App. 272, 639 P.2d 81 (1981); and where the defendant's fault adjusted damages, raised in a counter-claim equal or exceed the plaintiff's fault adjusted damages. *Scott v. Rizzo, supra,* 634 P.2d at 1243.

Under the "modified" form of comparative fault, on the other hand, a plaintiff who is equally, or more, at fault than a defendant in an accident will recover nothing, regardless of the injuries he has suffered. In other words, if a plaintiff is found to be fifty percent (50%) or more negligent than the defendant, the plaintiff will be barred from recovering any damages.

What form of comparative fault would serve as a practical rule in this case at hand; the "pure" or the "modified" form? It is the position of this Court that "pure" comparative fault will be applied. The "pure" form is most fitting to the interpretation of 7 N.T.C. §701(d) because:

1. The purpose of 7 N.T.C §701(d) is to reasonably compensate the injured party who was also at fault. The statute fixes no percentage of fault that eliminates the right to compensation. The statute by its very term is a "pure" comparative negligence statute. It is not a "modified" comparative negligence statute.

2. In compensating the injured party on a comparative fault basis, 7 N.T.C. §701(d) does not fix any percentage barring recovery. The intent of the Navajo Tribal Council, in adopting this law, was merely to provide reasonable compensation. The language of the statute was constructed to accomplish that very purpose. To interpret the statute otherwise would defeat the goal of 7 N.T.C. §701(d).

3. Plaintiff is correct in that "modified" comparative negligence does retain some aspect of contributory negligence. If 7 N.T.C §701(d) were to retain part of the all-or-nothing approach of contributory negligence, then that statute would be properly interpreted as the "modified" form of negligence. This is the position of the defendant. That is not the case. This Court agrees with the view adopted in *Li v. Yellow Cab Co.,* 13 Cal. 3d 804, 827-28, 532 P.2d 1226, 1242-43 (1975), that "the modified system simply shifts the lottery aspects of the contributory negligence rule to a different ground. . . ." *Id.* In effect "such a rule distorts the very principle it recognizes, i.e., that persons are responsible for their acts to the extent their fault contributes to an injurious result." *Id.*

4. The Navajo traditional notion of compensating the victims is consistent with 7 N.T.C. §701(d). Navajo traditional experts testified in the wrongful death case of *Fern Ann Benally v. The Navajo Nation, et al.,* 5 Nav. R. 209 (1986, Window Rock Dist. Ct.) that compensating the victims for their loss is the Navajo way.

The facts are that Plaintiff, Herman Cadman, suffered $79,060.00 in total damages, and that plaintiff and Defendant, Harry Hubbard, shared fault for the accident, which produced Plaintiff Cadman's damages. The pure comparative fault, under 7 N.T.C. §701(d), requires:

1. Fixing Plaintiff Cadman's degree of fault;

2. Fixing Defendant Hubbard's degree of fault;
and

3. Applying the percentage of Plaintiff Cadman's fault to his total damages. The result produces the amount to deduct from Plaintiff Cadman's $79,060.00 in damages.

This Court finds that Plaintiff, Herman Cadman, was 50% at fault in causing the collision and the Defendant, Harry Hubbard, was also 50% at fault.

The damages is determined as follows:

Total damages—$79,060.00
*Less* 50% of $79,060.00 = $39,530.00
Damage award—$39,530.00

It is therefore ORDERED that defendants pay the Plaintiff, Herman Cadman, $39,530.00 in damages.